Exhibit A

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.                                          SUPERIOR COURT DEPT.
                                                    OF THE TRIAL COURT

|  |  |
|---|---|
| COMMONWEALTH DIAGNOSTICS INTERNATIONAL, INC. | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| NEWTEK SMALL BUSINESS FINANCE, LLC | ) |
|  | ) |
| Defendants. | ) |

CIVIL ACTION NO. _____

## **VERIFIED COMPLAINT AND JURY DEMAND**

### **Introduction**

1.       Plaintiff Commonwealth Diagnostics International, Inc., ("CDI") brings this

action for a declaratory judgment (Count I) that Newtek Small Business Finance, LLC

("Newtek"), CDI's lender, lacks any entitlement to liquidate the collateral of CDI in connection

with Newtek's loan to CDI. On February 9, 2022, nearly two years into the COVID-19

pandemic, Newtek declared a default of CDI's loan. It claimed to accelerate the Note and

demanded immediate payment of the approximately $4 million which Newtek asserted was due

and owing. At that time, and through the present, Newtek had over $10 million in collateral for

the at-issue Note, including primary residences, personal guarantees, the real estate where CDI is

located, over $2 million in liquid securities, and other collateral. Now, just as CDI is recovering

from the impact of the COVID-19 impact, Newtek has declared that it is liquidating CDI's

collateral. CDI requests an injunction ordering that Newtek shall not liquidate CDI's collateral

until CDI has recovered from the impacts of the COVID-19 pandemic.

2.     As Newtek always knew, CDI was unable to consistently make payments as a direct result of the COVID-19 pandemic. CDI's core business is analyzing test kits which help to diagnose whether a patient suffers from a gastrointestinal disease. CDI brought its product to market in mid-2017 and demonstrated consistent growth until March 2020. The pandemic caused CDI's revenue stream to shrivel. The gastroenterologists who order the analysis of the test kits, like other physicians, were called upon to treat COVID-19 patients, and as a result were not treating their ordinary patients and ordering their routine diagnostic tests. At the same time, COVID-19 caused CDI's overhead costs to increase: material for test kits, shipping costs, personal protective equipment ("PPE") and (of course) personnel costs, all rose dramatically. CDI, understanding the dramatic impact of Covid-19 on its patients, delayed collection activities, wrote off more tests, and offered additional hardship-based payment plans as a courtesy to its patients, and to the detriment of its own revenue stream. CDI was unable to plug the gaps caused by falling revenues and increased costs, especially because the revenue which it did receive was dramatically delayed. The insurers, including Medicare, which directly pay for the analysis of CDI's test kits, often took over six months after receipt of a claim to make payment.

3.     COVID-19 dealt near-mortal blows to CDI, as it did to many other start-up businesses in the Commonwealth, particularly within the healthcare industry. Now, just as CDI is getting back to full health, Newtek has continued its pattern of overly aggressive and unreasonable measures to take advantage of CDI's weakened condition and now seeks to liquidate its collateral. CDI is not seeking damages through this action; it seeks only the time necessary to recover from the unforeseeable and dramatic pandemic, a mere six months.

## Parties

4.      Commonwealth Diagnostics International, Inc. is a Delaware corporation, with a

primary place of business located at 39 Norman Street, Salem, MA.

5.      Newtek Small Business Finance, LLC is a New York limited liability company

with a primary place of business located at 1981 Marcus Avenue Suite 130, Lake Success, NY

11042.

**Jurisdiction and Venue**

6.  This Court has jurisdiction over this action pursuant to G.L. c. 149 § 24L(e) and (f).

7.  Venue is proper in this Court pursuant to G.L. c. 149 § 24L(f).

**Factual Allegations**

<u>CDI Leverages the Legacy Assets of its Founders to Jumpstart the Business</u>

8.  Founded in 2015, CDI is an independent, clinical diagnostics and health technology company specializing in the early identification and management of gastrointestinal illness. Although CDI itself is relatively new, its business is built upon products, services, and customer relationships that CDI's founders developed at a previous business they owned and operated.

9.  CDI's core business is the manufacture and use of FDA-registered diagnostic test kits for detecting a variety of gastrointestinal illnesses. Among a host of other products, CDI provides physicians with the means to diagnose Irritable Bowel Syndrome with CDI's product IBSchek®, the first clinically validated blood test for diagnosis of IBS with diarrhea.

10. CDI earns its revenue through insurance reimbursements for use of its diagnostic tests.

11. Upon request from a gastroenterologist, and before receiving any payment, CDI mails a test kit to the physician or medical office for diagnosis of a patient's potential gastrointestinal illness. This step requires an initial investment of about $30-35 inclusive of the cost of the test kit, shipping, and other overhead.

12.     Upon receiving a test kit back from a patient, CDI analyzes the test kit at CDI's Clinical Laboratory Improvement Amendments (CLIA) certified laboratory in Salem, Massachusetts and releases the results to the physician.

13.     By the time that CDI releases the results of its analysis to the physician, a month or more has often passed since CDI originally mailed the test.

14.     At that point, CDI submits an insurance claim for payment to Medicare or a commercial insurer.

15.     Prior to the COVID-19 pandemic, Medicare, which provides health insurance for about 40% of the patients for whom CDI provides test kits, typically reimbursed CDI for its diagnostic services within about 90-120 days from receipt of claim.

16.     Prior to the COVID-19 pandemic, to the extent commercial insurers agreed to provide reimbursement, similar to Medicare, they did so within about 90-120 days from receipt of claim. In many instances, however, commercial insurers refused to pay all or part of a claim such that it became necessary for CDI to seek to collect directly from the patient. To state the obvious, seeking to collect payment directly from patients during an unrelenting two years of pandemic conditions entailed substantial unforeseen further delays.

17.     Although formed in 2015, CDI began to operate in earnest in 2017. CDI only acquired the assets necessary to undertake commercial operations at that time, including, among other things, the intellectual property of its principals' prior business.

18.     Broadly, CDI's plan was to regenerate the success its principals had enjoyed with their prior business by re-establishing the same relationships its prior business had enjoyed, using the same or similar products and services. Indeed, CDI expanded upon the products the prior

business had offered, including new biomarker tests, as well as a state-of-the-art collection kit that allows for seamless international scaling of IBSchek®.

<u>Newtek Claims to Need Over $10 Million in Collateral to Secure a $5 Million Loan</u>

19.     By mid-2017, CDI was preparing to "ramp up" in order to reintroduce to the United States market the legacy suite of products its principals had developed previously.

20.     As it prepared to re-enter the market, CDI sought an infusion of cash in order to re-start the products, services, and relationships of the principals' prior business. CDI solicited a Small Business Administration ("SBA") loan from Newtek to do so.

21.     The negotiations between CDI and Newtek were heated. CDI explained its circumstances to Newtek, including that while technically a "start-up" it was far better positioned than a typical start-up: it was seeking to leverage the assets and relationships of the previous business.

22.     To CDI's surprise, although it sought a $5 million loan from Newtek, Newtek demanded over $10 million in collateral, exclusive of personal guaranties. It required a Raymond James Collateralized Securities Account with about $2 million in cash. It further insisted upon mortgages on Brian J. Strasnick's ("Brian") and Craig S. Strasnick's ("Craig") personal residences including their primary residences at 72 Blodgett Ave., Swampscott, MA (with about $3 million of equity) and 34 Blodgett Ave., Swampscott, MA (with about $1.7 million of equity), as well as a secondary residence at 219 Sparling Ave., Hot Springs, AR ($750,000 in equity). Newtek also required a mortgage on CDI's real estate, owned through a subsidiary, including 38 Norman Street and 39 Norman Street, Salem, MA (about $3.4 million in equity, presently about $2.4 million in 39 Norman Street). The total value of the real assets is thus $9.85 million, not including the personal guaranties. Beyond those real assets, Newtek further demanded personal

guaranties from the principals of CDI, Brian and Craig, as well as from CDI's subsidiaries Common Ground Enterprises, LLC, Common Ground Realty, LLC, and Common Ground Associates, LLC.

23.     CDI consistently resisted providing more than double the amount of collateral which Newtek had demanded.

24.     In response, Newtek represented that the SBA had required that amount of collateral. On that purported basis, Newtek refused to provide the loan unless CDI agreed to supply the demanded collateral.

25.     CDI relied upon Newtek as an "SBA-preferred lender" to truthfully communicate the SBA's demands.

26.     CDI ultimately agreed to Newtek's demands solely in reliance upon Newtek's representations that the SBA required all of the at-issue collateral.

27.     The reality, however, was the opposite of what Newtek had represented to CDI.

28.     The SBA never required, whether through rule, regulation, ad hoc order or otherwise, that CDI provide collateral valued at more than double the value of the at-issue loan.

29.     If CDI had known the truth, that the SBA did not require over $10 million in collateral, it never would have agreed to the loan terms upon which Newtek insisted.

30.     Ultimately, the Newtek loan closed in September 2017. Attached hereto as Exhibit A are true and correct copies of the loan closing documents. The Note contained therein includes provisions at Section 5 of the Note purporting to entitle Newtek to liquidate the collateral in the event of a claimed default.

31.     CDI communicated its business model and plan for regenerating its legacy business to Newtek.

32.     At all times, Newtek understood CDI's business, including, without limitation, CDI's reliance upon insurance payments for its revenue stream and that CDI depends upon orders for analysis of test kits from physicians.

### Newtek Seizes the Proceeds of the Sale of 38 Norman Street

33.     By the first quarter of 2018, CDI recognized that it would require some additional time to recapture the legacy relationships which the principals' prior business had enjoyed.

34.     CDI therefore sought to liquidate part of CDI's assets, namely the parking lot located at 38 Norman Street, Salem, MA. CDI's intent was to provide a sufficient source of cash to enable it to service the Newtek debt while it continued to regenerate its business.

35.     CDI explained to Newtek that it needed the revenue from the sale of 38 Norman Street in order to consistently make the monthly payments to Newtek.

36.     Newtek, however, refused to permit CDI to retain the cash from the sale of 38 Norman Street. Instead, it represented that it was required to recover $500,000 from the sale of 38 Norman Street. CDI understood that representation to mean that the SBA was requiring Newtek to recover that value from the sale of 38 Norman Street.

37.     Again, however, the reality was the opposite of what Newtek represented to CDI. The SBA never required by any means that CDI provide $500,000 of the revenue from the sale of 38 Norman Street to Newtek.

38.     Again, CDI relied upon Newtek's representations. It therefore paid to Newtek the $500,000 demanded and retained just $200,000 from its sale of 38 Norman Street.

39.     As a direct result of Newtek's demand that CDI pay $500,000 from the sale of 38 Norman Street, CDI was unable to obtain the cash which it sought to consistently make the payments on its loan from Newtek.

40.     Newtek consistently and aggressively threatened to collect the collateral on the loan as a result of CDI's purported inability to make monthly payments.

41.     Ironically, CDI was sometimes unable to make such payments exactly because Newtek had, through its deceit, prevented CDI from obtaining the revenue necessary to make the monthly payments.

42.     Nevertheless, CDI continued to develop its business, and by March of 2020 had obtained nearly the revenue necessary to service its debt to Newtek. Indeed, it had nearly reached the volume of tests which the legacy business had obtained.

### COVID-19 Makes it Impossible for CDI to Make Regular Payments to Newtek

43.     Then, in March of 2020, the COVID-19 pandemic broke out, immediately and severely handicapping CDI's business.

44.     The COVID-19 pandemic impacted CDI in at least three critical respects. First, it directly caused the volume of diagnostic tests which CDI handled to plummet. Indeed, the gastroenterologists who ordinarily ordered the analysis of test kits from CDI were occupied by the pandemic and therefore were not ordering tests to diagnose gastro-intestinal conditions. Second, the pandemic caused CDI's overhead to increase dramatically. Many of the materials which CDI uses in its test kits became far more expensive. CDI's personnel costs rose precipitously. In general, at every step of CDI's business, the costs of operating became far higher as a result of the pandemic. Third, as a result of the pandemic all the insurance carriers took far longer to remit any payment for the analysis of test kits than they had previously. Indeed, in many instances, insurers required up to 280 days simply to determine whether to remit payment. Fourth, in light of the pandemic, CDI delayed collection activities on patient payments,

wrote off more tests, and offered additional hardship-based patient payment plans, all of which additionally reduced yet another significant source of income for CDI.

45.     As a result of COVID's impact upon the business, CDI was unable to service the loan as it had anticipated doing. Nevertheless, it continued to develop the business. It has continued to grow the business as COVID has begun to subside.

46.     CDI has consistently explained to Newtek the myriad respects in which the COVID-19 pandemic has impacted CDI's ability to service CDI's loan from Newtek.

<u>Just as CDI Begins to Recover, Newtek Announces Liquidation of Collateral</u>

47.     Now, CDI is again approaching a point where it will be able to service the debt to Newtek, exactly as it was in the time period immediately before the COVID-19 pandemic struck.

48.     On February 9, 2022, however, Newtek declared a default on the loan and accelerated the Note, demanding payment of approximately $4 million immediately.

49.     Since that time, CDI has continued to seek to grow its business. Indeed, it is now in a position where it expects shortly to be able to service the Newtek loan.

50.     However, Newtek precipitously determined to begin liquidating CDI's collateral. It made that decision to do so despite CDI's improved business position and anticipated ability to service the Newtek debt following COVID. Indeed, Newtek announced that it would begin liquidating CDI's collateral on May 5, 2022, beginning with the $2+ million of securities in the Raymond James account.

## COUNT I

### Declaratory Judgment

51.     CDI repeats the allegations set forth above as if fully contained herein.

52.     An actual controversy exists between CDI and Newtek regarding Newtek's ability to liquidate CDI's collateral.

53.     Pursuant to G.L. c. 231A, CDI seeks a declaration that under the doctrines of commercial impracticability, impossibility, and frustration of purpose Newtek lacks any entitlement to liquidate CDI's assets on the basis of CDI's deficiencies in payment to date or to otherwise seek to liquidate CDI's collateral until CDI recovers from the impact of the COVID-19 pandemic.

54.     CDI further seeks a declaration that where Newtek procured CDI's collateral by fraud, the language of Newtek's Note, at Section 5, purporting to entitle Newtek to liquidate collateral is void.


**WHEREFORE**, Plaintiff CDI respectfully requests that this Court enter judgment in its favor on all counts of the Complaint and grant it the following relief:

1.     Enter the declaratory relief requested in Count I of the Complaint;

2.     A preliminary and permanent injunction that Newtek may not seek to liquidate CDI's collateral until CDI recovers from the impact of the COVID-19 pandemic, or six months; and

3.     Award CDI such other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.**

Respectfully submitted,

**COMMONWEALTH DIAGNOSTICS INTERNATIONAL, INC.**

By its attorneys,

/s/ *Benjamin J. Wish*
Benjamin J. Wish (BBO #672743)
bwish@toddweld.com
Jason M. Brown (BBO # 706215)
jbrown@toddweld.com
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA  02110
(617) 720-2626

Dated:  May 6, 2022

## VERIFICATION

I, Craig Strasnick, verify that I have read the allegations contained in this Verified

Complaint and Jury Demand; that I have personal knowledge of the facts or that the facts are true

to the best of my knowledge and that I believe that the allegations made upon information and

belief are true.

SIGNED UNDER THE PENALTIES OF PERJURY THIS 5ᵀᴴ DAY OF MAY

_____, 2022

CRAIG STRASNICK

# Exhibit A



***Newtek***
**Small Business Finance**
*Constantine N. Kokinakis, Counsel*
*(212) 356-9500 ext. 10422*
*ckokinakis@newtekbusinessservices.com*

*September 19, 2017*

<u>**Via Email to**</u>
Ross S. Rumsky
Vice President and Office Counsel
Fidelity National Title Insurance Services, LLC
rrumsky@fnf.com

Gray W. Rifkin, Esq.
Commonwealth Diagnostics International, Inc.
39 Norman Street
Salem, MA 01970
grifkin@commdx.com

Re:    $5,000,000.00 U.S. Small Business Administration (SBA) Guaranteed Loan No. PLP
       97379950-01 by Newtek Small Business Finance, LLC (Loan No. 111156/711071) to
       Commonwealth Diagnostics International, Inc.

Dear Mr. Rumsky:

       As you are aware, I am counsel to Newtek Small Business Finance, LLC ("Newtek") in
connection with the above-referenced SBA 7(a) Loan to Commonwealth Diagnostics
International, Inc. (the "Borrower").

       The Loan is scheduled to close on Wednesday, September 20, 2017, at the offices of
Commonwealth Diagnostics International, Inc., located at 39 Norman Street, Salem, MA 01970.

       This letter shall constitute Closing and Escrow Instructions to title company counsel,
Ross S. Rumsky, and Closing Instructions to Borrower's counsel, Gray W. Rifkin, Esq., in
connection with the closing of the Loan.

       Below please find a list of the closing documents which are being sent today via email to
Fidelity and which are to be properly executed (one original from each signatory) on behalf of all
Borrowers and Guarantors, dated, witnessed and/or notarized as of the date of closing.  Also
below are additional Closing Instructions as indicated.

I.     <u>**LIST OF CLOSING DOCUMENTS:**</u>

       1.    Escrow and Closing Instructions Letter
       2.    SBA Form 1050, Settlement Sheet with Use of Proceeds Grid annexed thereto

**Newtek**
*Small Business Finance*

3.    Loan Agreement and SBA Authorization annexed thereto
4.    Borrower's Certification
5.    SBA Form 147, Note
6.    SBA Form 148, Guaranty – Common Ground Enterprises, LLC
7.    SBA Form 148, Guaranty – Common Ground Realty, LLC
8.    SBA Form 148, Guaranty – Common Ground Associates, LLC
9.    SBA Form 148, Guaranty – Craig S. Strasnick
10.   SBA Form 148, Guaranty – Brian J. Strasnick
11.   SBA Form 148L, Limited Guaranty – The Cliff Road Realty Trust u/d/t July 16, 2013
12.   SBA Form 148L, Limited Guaranty – Bonnie E. Strasnick
13.   SBA Form 160, Resolution of Board of Directors of Commonwealth Diagnostics International, Inc.
14.   SBA Form 160, Consent of Members of Common Ground Enterprises, LLC
15.   SBA Form 160, Consent of Members of Common Ground Realty, LLC
16.   SBA Form 160, Consent of Members of Common Ground Associates, LLC
17.   Trustee Certification - The Cliff Road Realty Trust u/d/t July 16, 2013
18.   General Security Agreement of Borrower
19.   SBA Form 155, Standby Creditor's Agreement – Craig S. Strasnick
20.   Mortgage and Security Agreement – 38 & 39 Norman Street a/k/a 1 Holyoke Square, Salem, MA 01970
21.   Assignment of Leases and Rents - 38 & 39 Norman Street a/k/a 1 Holyoke Square, Salem, MA 01970
22.   Landlord's Consent - 38 & 39 Norman Street a/k/a 1 Holyoke Square, Salem, MA 01970
23.   MA Mortgage Deed - 72 Blodgett Avenue, Swampscott, MA 01970
24.   AR Mortgage - 219 Sparling Road, Hot Springs, AR 71913
25.   Acknowledgement of Receipt of EEO Poster with EEO Poster annexed thereto
26.   SBA Form 159, Fee Disclosure Form and Compensation Agreement
27.   Errors and Omissions
28.   SBA Compliance Affidavit
29.   SBA Drug Free Workplace Certification
30.   Name Affidavit of Brian J. Strasnick
31.   Name Affidavit of Craig S. Strasnick
32.   Name Affidavit of Bonnie E. Strasnick
33.   Name Affidavit of Gray W. Rifkin
34.   IRS Form 4506
35.   Auto-Debit Authorization Form
36.   Flood Zone Determination Forms
37.   Disbursement Sheet – Fidelity
38.   Trustee Certification - Fidelity

## II.    CLOSING INSTRUCTIONS:

- The closing may not commence without authorization on the day of closing from Martha Moreira or the undersigned.

1981 Marcus Avenue, Suite 130   Lake Success, NY 11042   Phone: (212) 356-9500   Fax: (516) 539-7794
Website: http://www.thesba.com



*Small Business Finance*

- Powers of Attorney are not accepted. Brian J. Strasnick, Craig S. Strasnick, Bonnie E. Strasnick and Gray W. Rifkin are required to be present at the closing location.
- Brian J. Strasnick, Craig S. Strasnick, Bonnie E. Strasnick and Gray W. Rifkin are required to bring identification to the closing. Please also make sure that all signatures are consistent throughout all the loan documents.
- Borrower's Certification: PLEASE NOTE: Borrower must acknowledge each item by initialing next to each representation, and by signing at the bottom of the form.
- Please obtain duplicate originals for all documents sent for recording.
- **ONCE ALL DOCUMENTS HAVE BEEN EXECUTED, PLEASE SCAN AND EMAIL ALL THE CLOSING DOCUMENTS TO MARTHA MOREIRA AND THE UNDERSIGNED**

We will review these documents, and upon approval, will email authorization to Fidelity National Title Insurance Services, LLC to disburse the loan proceeds in accordance with the Use of Proceeds Grid.
****************
**LOAN PROCEEDS ARE NOT TO BE DISBURSED WITHOUT SPECIFIC AUTHORIZATION IN WRITING FROM NEWTEK.**
****************

- Fidelity National Title Insurance Services, LLC is to file and record the Mortgage in the appropriate governmental office, and pay any applicable Mortgage tax and recording fees.
- Within two (2) business days of closing, the original documents signed at closing containing all required original signatures must be returned to Newtek at: Newtek Small Business Finance, LLC, Attn.: Constantine N. Kokinakis, 1981 Marcus Avenue, Suite 130, Lake Success, NY 11042.

### III.   **ESCROW INSTRUCTIONS**
- Fidelity National Title Insurance Services, LLC will receive from our office a wire in the amount of $4,841,015.56, to be held in escrow pursuant to the terms of this Letter and disbursed upon instructions from Christine Bedrossian or the undersigned in accordance with the attached "Attachment to SBA Form 1050, Settlement Sheet" which must be signed by the borrower.
- Newtek shall be provided with copies of all disbursements/wires/checks.

| | | |
|---|---|---|
| Newtek Small Business Finance, LLC | $158,984.44 | Loan expenses |
| Fidelity National Title Insurance Services, LLC | $18,983.75 | Title and closing fees |
| Commonwealth Diagnostics International, Inc. | $4,822,031.81 | Working Capital |



Please signify your agreement to the foregoing by signing below and returning to the undersigned via email prior to the closing. If you have any questions, please contact the undersigned or Martha Moreira.

Very truly,

Constantine N. Kokinakis

AGREED & ACCEPTED:

By: _____
Ross S. Rumsky

AGREED & ACCEPTED:

By: _____
Brian J. Strasnick

AGREED & ACCEPTED:

By: _____
Craig S. Strasnick

AGREED & ACCEPTED:

By: _____
Gray W. Rifkin

*By signing these instructions, Borrower agrees as follows (a) Borrower acknowledges and agrees with each and all of the instructions herein, (b) Borrower acknowledges that Newtek Small Business Finance, LLC ("Lender") is under no obligation to fund the Loan or close this escrow unless and until all conditions to such funding and closing (whether under these instructions, Lender's written Loan commitment, or otherwise) have been satisfied in Lender's sole and absolute discretion, and that none of the conditions to funding or closing the Loan have been or may be waived by Lender except by a separate writing specifically waiving specified conditions, (c) Lender makes absolutely no representations or warranties regarding any appraisal, environmental, property inspection, or other reports obtained by Lender*



concerning the subject property, Borrower has not and will not rely upon the same for any purposes, and Lender and/or the report authors shall have absolutely no liability to Borrower by reason of the same (including without limitation their accuracy, validity, conclusions or reliability), (d) all documents, financial and accounting information, tax returns, and other information previously provided by Borrower (and/or any guarantors of the Loan) to Lender was and is true, complete and accurate, and there has been no material adverse change in any of such documents or information, (e) the primary purpose of the Loan is for commercial or business purposes (and not for personal, family or household purposes or personal investment), (f) Borrower shall maintain or cause to be maintained at all times after closing all permits, license, and other governmental approvals necessary or appropriate for the continued existence and lawful conduct of the business of Borrower (including without limitation lawful operation of the Property) and each guarantor of the Loan, (g) the Loan Documents, these instructions (as hereafter amended by Lender, if at all), and any written Loan commitment(s) previously issued by Lender to Borrower, collectively set forth the sole, entire and integrated agreement between Lender and Borrower concerning the Loan, and there are no other agreements or understandings concerning the Loan, and (h) each and all of the agreements of the Borrower in these instructions shall survive escrow closing and shall be deemed incorporated into and a part of the promissory note evidencing the Loan made through this escrow.

**Borrower Initial Here**

cc:     Martha Moreira

ATTACHMENT TO
SBA FORM 1050
SETTLEMENT SHEET

-$5,000,000.00

|  | Loan Name: Commonwealth Diagnostics International, Inc. | | |
|---|---|---|---|
|  | NSBF/RID No. 111156/711071 | | |
|  | SBA Loan No. PLP 97379950-01 | | |
| Loan Authorization Subpar. | Payee | Amount | Purpose |
| 1 & 2 | Newtek Small Business Finance, LLC | $158,984.44 | Loan expenses |
| 1 | Fidelity National Title Insurance Services, LLC | $18,983.75 | Title and closing fees |
| 1 | Commonwealth Diagnostics International, Inc. | $4,822,031.81 | Working Capital |

**Loan expenses**

| | |
|---|---|
| SBA Guarantee fee | $138,125.00 |
| Interim interest | $10,694.44 |
| Lien searches | $2,527.00 |
| Legal fee | $5,025.00 |
| Residential Appraisal | $700.00 |
| Environmental Report | $1,700.00 |
| Commercial Appraisal | $5,800.00 |
| Commercial Appraisal Review | $1,300.00 |
| Newtek packaging fee | $2,500.00 |
| Tax Transcript Fee | $13.00 |
| **Total expenses** | **$168,384.44** |
| Good Faith Deposit Applied | -$9,400.00 |
| Expense Balance Due From Loan Proceeds | **$158,984.44** |

COMMONWEALTH DIAGNOSTICS
INTERNATIONAL, INC.

By: _____
Craig S. Strasnick, President

| U.S. Small Business Administration | OMB APPROVAL NO.: 3245-0200 |
| Settlement Sheet | EXPIRATION DATE: 04/30/2018 |
| (Use of Proceeds Certification) | |

| SBA Loan Number (10 Digits) | Loan Approval Amount | SBA Loan Name |
|---|---|---|
| 9737995001 | $5,000,000.00 | Commonwealth Diagnostics International, Inc. |

| Lender (Name and Address – Incl. zip code) | Borrower Name (if different from SBA Loan Name) |
|---|---|
| Newtek Small Business Finance, LLC, 1981 Marcus Avenue, Suite 130, Lake Success, NY 11042 | Commonwealth Diagnostics International, Inc. |

This form is to be signed by the lender and the borrower at the time of the initial loan disbursement. Lender must retain the completed form and any related information in its files and submit to SBA upon request, or in the event of a loan default, as supporting documentation for lender's request for loan guarantee purchase.

At the time of initial disbursement of this loan, Lender and Borrower certify that:

(1) The loan funds were disbursed and received and will be used in accordance with the Use of Proceeds section of the Authorization, including any and all SBA/Lender approved modifications, and that all required equity or borrower injections have been made in accordance with the Authorization and any approved modifications.

(2) There are no liens or encumbrances against the real or personal property securing the loan except those disclosed in the application for this loan; and

(3) There has been no unremedied adverse change in the Borrower's or Operating Company's financial condition, organization, management, operations or assets since the date of application that would warrant withholding or not making this disbursement or any further disbursement.

(4) All fees charged or to be charged or received in connection with the making of this loan are permitted by SBA's regulations as well as SBA Form 750, "Guaranty Agreement," and have been reported to SBA on SBA Form 1920, "Lender's Application for Guaranty," and on SBA Form 159 7(a), "Compensation Agreement". It is further understood that all fees not specifically approved by SBA are prohibited.

At the time of each subsequent disbursement on this loan, Lender and Borrower by disbursing and receiving the loan proceeds are deemed to certify that the above certifications are true with respect to each and every disbursement made on or before such date.

To further induce SBA to participate in the loan, Lender certifies as of the date of each disbursement that:

(1) All disbursements were (or for future disbursements, will be) made, tracked and documented in accordance with the Authorization and prudent lending practices and failure to do so may be a cause for SBA to deny liability under its guaranty. The documentation must contain sufficient detail for SBA to determine: (a) the recipient of each disbursement (Note: must show the ultimate recipient, not an intermediary such as a title company); (b) the date and amount of each disbursement; and (c) the purpose of each disbursement. Documentation acceptable to SBA evidencing compliance with the Use of Proceeds section of the Authorization (such as joint payee checks, cancelled checks, paid receipts or invoices, wire transfer account records, etc.) must be attached to this form and provided to SBA along with a copy of this form upon SBA's request.

(2) Neither the Lender nor its Associates, officers, agents, affiliates or attorneys have charged or will charge or receive, directly or indirectly, any fees not permitted by SBA's regulations and policies as well as SBA Form 750, "Guaranty Agreement," including processing, underwriting, servicing, broker, or referral fees, bonuses, commissions, or points, or have required or will require a compensating balance or certificate of deposit or security that would convey a preference.

WARNING: By signing below you are certifying that the above statements are accurate to the best of your knowledge. Submitting false information to the Government may result in criminal prosecution and imprisonment for up to 30 years and fines of up to $250,000 under 18 USC 1001, penalties under 15 USC 645, and/or civil fraud liability.

| Lender's Name: Newtek Small Business Finance, LLC | Borrower's Name: Commonwealth Diagnostics International, Inc. |
|---|---|
| BY: Signature | BY: Signature |
| Title: Loan Closer        Date: 9/20/2017 | Title: President        Date: 9/20/2017 |

SBA Form 1050 (2-15) Previous Editions Obsolete

NOTE: According to the Paperwork Reduction Act, you are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated burden for completing this form, including time for reviewing instrucions, gathering data needed, and completing and reviewing the form is 15 minutes per response. Comments or questions on the burden estimates should be sent to U.S. Small Business Administration, Chief, AIB, 409 3rd St., SW, Washington DC 20416 and SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Room 10202, Washington, DC 20503. PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.

NSBF/RID #: 111156/711071<br>SBA Loan No: PLP 97379950-01

## LOAN AGREEMENT

THIS **LOAN AGREEMENT** ("Agreement") is made September 20, 2017, between the Borrower, Commonwealth Diagnostics International, Inc., a Delaware corporation maintaining a principal place of business located at 39 Norman Street, Salem, MA 01970, and Lender, Newtek Small Business Finance, LLC, a New York limited liability company with an address of 1981 Marcus Avenue, Suite 130, Lake Success, NY 11042, as identified in the attached Authorization issued by the U.S. Small Business Administration ("SBA") to Lender, SBA Loan Number PLP 97379950-01 ("Authorization").

SBA has authorized a guaranty of a loan from Lender to Borrower for the amount and under the terms stated in the attached Authorization (the "Loan").

In consideration of the promises in this Agreement and for other good and valuable consideration, Borrower and Lender agree as follows:

1.    Subject to the terms and conditions of the Authorization and SBA's Participating Lender Rules as defined in the Guarantee Agreement between Lender and SBA, Lender agrees to make the Loan if Borrower complies with the following "Borrower Requirements." Borrower must:

   a.  Provide Lender with all certifications, documents or other information Lender is required by the Authorization to obtain from Borrower or any third party;

   b.  Execute a note and any other documents required by Lender; and

   c.  Do everything necessary for Lender to comply with the terms and conditions of the Authorization.

2.    The terms and conditions of this Agreement:

   a.  Are binding on Borrower and Lender and their successors and assigns; and

   b.  Will remain in effect after the closing of the Loan.

3.    Failure to abide by any of the Borrower Requirements will constitute an event of default under the note and other loan documents.

4.    As part of the collateral for this loan, Lender is taking a first priority security interest on Marketable Securities in the amount of $2,000,000 in the name of Brian Strasnick. The release of the marketable securities may be requested by Borrower and approved at Lender's discretion, not to be unreasonably withheld, if at the time of Borrower's request:

   a.  Borrower is in good standing with Newtek; and

1

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

    b.   cash flow coverage is 1.15:1 or greater; and

    c.   collateral coverage is 100% with the remaining collateral (due to a combination of increased value and reduction of the loan balance ), pending SBA approval.

    5.    As a condition to this loan, the Borrower has executed a SBA Form 155 Standby Agreement of even date (the "Standby Agreement") in which it agrees to accept no further principal or interest payments on a $9,547,485 shareholder loan made by Craig S. Strasnick (the "Standby Loan") until this Loan is satisfied. The release of the Standby Agreement may be requested by Borrower and approved at Lender's discretion, not to be unreasonably withheld, if at the time of Borrower's request:

    a.   Borrower is in good standing with Newtek; and

    b.   cash flow coverage is 1.15:1 or greater.

**BORROWER:**

**COMMONWEALTH DIAGNOSTICS INTERNATIONAL, INC.**

By: _____
    Craig S. Strasnick, President

COMMONWEALTH OF MASSACHUSETTS    }
                               }  ss.:
COUNTY OF ___Essex___    }

On this 20th day of September, 2017, before me appeared Craig S. Strasnick to me personally known, who, being by me duly sworn (or affirmed), did say that he is the President of Commonwealth Diagnostics International, Inc., and that said instrument was signed in behalf of said corporation by authority of its board of directors, and said Craig S. Strasnick acknowledged said instrument to be the free act and deed of said corporation.

_____
Notary Public

ALEXANDER J. CAPANO
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Oct. 17, 2019

2

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

## BORROWER'S CERTIFICATION

[INSTRUCTIONS:  INDICATE THE PARAGRAPHS BEING CERTIFIED TO BY
HAVING THE BORROWER <u>INITIAL</u> IN THE [ _] NEXT TO THE APPROPRIATE
PARAGRAPHS, PRIOR TO SIGNING.]

In order to induce **Newtek Small Business Finance, LLC** ("Lender") to make a U. S. Small
Business Administration ("SBA") guaranteed Loan, SBA Loan Number PLP 97379950-01
("Loan") to **Commonwealth Diagnostics International, Inc.** ("Borrower"),

A.    **Borrower certifies that:**

1. **Receipt of Authorization** - Borrower has received a copy of the Authorization for this
Loan from Lender, and acknowledges that:

> a.     The Authorization is <u>not</u> a commitment by Lender to make a loan to
> Borrower;
>
> b.     The Authorization is between Lender and SBA and creates no third party
> rights or benefits to Borrower;
>
> c.     The Note will require Borrower to give Lender prior notice of intent to
> prepay.
>
> d.     If Borrower defaults on the Loan, SBA may be required to pay Lender
> under the SBA guarantee.   SBA may then seek recovery of these funds from Borrower.
> Under SBA regulations, 13 CFR  Part 101, Borrower may not claim or assert
> SBA any immunities or defenses available under local law to defeat, modify or otherwise
> limit Borrower's obligation to repay to SBA  any funds advanced by Lender to Borrower.
>
> e.     Payments by SBA to Lender under SBA's guarantee will not apply to the
> Loan account of Borrower, or diminish the indebtedness of Borrower under the Note or
> the obligations of any personal guarantor of the Note.

2. **Adverse Change** - That there has been no adverse change in Borrower's financial
condition, organization, operations or fixed assets since the date the Loan application was signed.

3. **Child Support** - No principal who owns at least 50% of the ownership or voting interest
of the Borrower is delinquent more than 60 days under the terms of any (1) administrative order,
(2) court order, or (3) repayment agreement requiring payment of child support.

4. **Current Taxes** - Borrower is current (or will be current with any loan proceeds
specified for eligible tax payments) on all federal, state, and local taxes, including but not limited
to income taxes, payroll taxes, real estate taxes, and sales taxes.

5. **Environmental** — For any real estate pledged as collateral for the Loan or where the
Borrower or Operating Company is conducting business operations (collectively "the Property"):

1

111156 - 711071 - SBA Borrower's Certification - Commonwealth Diagnostics International,
Inc.

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

    a.    At the time Borrower and Operating Company submitted the Loan application, Borrower was in compliance with all local, state, and federal environmental laws and regulations pertaining to reporting or clean-up of any hazardous substance, hazardous waste, petroleum product, or any other pollutant regulated by state or federal law as hazardous to the environment (Contaminant), and regarding any permits needed for the creation, storage, transportation or disposal of any Contaminant;

    b.    Borrower and Operating Company will continue to comply with these laws and regulations;

    c.    Borrower and Operating Company, and all of its principals, have no knowledge of the actual or potential existence of any Contaminant that exists on, at, or under the Property , including  groundwater under such Property other than what was disclosed in connection with the Environmental Investigation of the Property;

    d.    Until full repayment of Loan, Borrower and Operating Company will promptly notify Lender if it knows or suspects that there has been, or may have been, a release of a Contaminant, in, at or under the Property, including groundwater, or if Borrower or Operating Company or such property are subject to any investigation or enforcement action by any federal, state or local environmental agency (Agency) pertaining to any Contaminant on, at, or under such Property, including groundwater.

    e.    As to any Property owned by Borrower or Operating Company, Borrower or Operating Company agrees to fully indemnify, defend and hold harmless Lender and SBA, and any assigns or successors in interest which take title to the Property, from and against all liabilities, damages, fees, penalties or losses arising out of any demand, claim or suit by any Agency or any other party relating to any Contaminant found on, at or under the Property, including  groundwater, regardless of whether such Contaminant resulted from Borrower's or Operating Company's operations. (Lender or SBA may require Borrower or Operating Company to execute a separate indemnification agreement).

B.  **Borrower certifies that it will:**

1. **Reimbursable Expenses-** Reimburse Lender for expenses incurred in the making and administration of the Loan.

2. **Books, Records, and Reports-**

    a.    Keep proper books of account in a manner satisfactory to Lender;

    b.    Furnish year-end statements to Lender within 120 days of fiscal year end;

    c.    Furnish additional financial statements or reports whenever Lender requests them;

    d.    Allow Lender or SBA, at Borrower's expense, to:

111156 - 711071 - SBA Borrower's Certification - Commonwealth Diagnostics International, Inc.

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

   1)    Inspect and audit books, records and papers relating to Borrower's financial or business condition; and

   2)    Inspect and appraise any of Borrower's assets; and

   3)    Allow all government authorities to furnish reports of examinations, or any records pertaining to, upon request by Lender or SBA.

3. **Equal Opportunity** - Post SBA Form 722, Equal Opportunity Poster, where it is clearly visible to employees, applicants for employment and the general public.

4. **American-made Products** - To the extent practicable, purchase only American-made equipment and products with the proceeds of the Loan.

5. **Taxes** - Pay all federal, state, and local taxes, including income, payroll, real estate and sales taxes of the business when they come due.

6. **Occupancy**—Comply with the following provisions: Borrower must occupy at least 51% of the total Rentable Property and may lease up to 49% of the Rentable Property for business or residential use. Borrower will not use Loan proceeds to improve or renovate any of the Rentable Property that is leased to third parties. Borrower may provide up to 49% of the Rentable Property occupied by Borrower for use by a resident owner or manager only if the nature of the business demands it.

**C. Borrower and Operating Company certify that it will not, without Lender's prior written consent:**

1. **Distributions**- Make any distribution of company assets that will adversely affect the financial condition of Borrower.

2. **Ownership Changes** - Change the ownership structure or interests in the business during the term of the Loan.

3. **Transfer of Assets** - Sell, lease, pledge, encumber (except by purchase money liens on property acquired after the date of the Note), or otherwise dispose of any of Borrower's property or assets, except in the ordinary course of business.

**BORROWER:**

**COMMONWEALTH DIAGNOSTICS INTERNATIONAL, INC.**

By: _____
    Craig S. Strasnick, President

3

111156 - 711071 - SBA Borrower's Certification - Commonwealth Diagnostics International, Inc.

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

COMMONWEALTH OF MASSACHUSETTS                    }
                                                 }        ss.:
COUNTY OF _____Essex_____                }

On this 20th day of September, 2017, before me appeared Craig S. Strasnick to me personally
known, who, being by me duly sworn (or affirmed), did say that he is the President of
Commonwealth Diagnostics International, Inc., and that said instrument was signed in behalf of
said corporation by authority of its board of directors, and said Craig S. Strasnick acknowledged
said instrument to be the free act and deed of said corporation.

_____
Notary Public

ALEXANDER J. CAPANO
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Oct. 17, 2019

4

111156 - 711071 - SBA Borrower's Certification - Commonwealth Diagnostics International,
Inc.



U.S. Small Business Administration

# NOTE

| SBA Loan # | PLP 97379950-01 |
|---|---|
| SBA Loan Name | Commonwealth Diagnostics International, Inc. |
| Date | September 20, 2017 |
| Loan Amount | $5,000,000.00 |
| Interest Rate | Prime Rate + 2.75% Variable Rate |
| Borrower | Commonwealth Diagnostics International, Inc. |
| Operating Company | Commonwealth Diagnostics International, Inc. |
| Lender | Newtek Small Business Finance, LLC |

1. PROMISE TO PAY:

   In return for the Loan, Borrower promises to pay to the order of Lender the amount of

   Five Million and 00/100 ($5,000,000.00) _____ Dollars,

   interest on the unpaid principal balance, and all other amounts required by this Note.

2. DEFINITIONS:

   "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

   "Guarantor" means each person or entity that signs a guarantee of payment of this Note.

   "Loan" means the loan evidenced by this Note.

   "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

   "SBA" means the Small Business Administration, an Agency of the United States of America.

3.   PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

This Note will mature in 10 years from date of Note.

The interest rate on this Note will fluctuate.  The initial interest rate is 7.00% per year.  This initial rate is the Prime Rate in effect on the first business day of the month in which SBA received the loan application, plus 2.75%.  The initial interest rate must remain in effect until the first change period begins unless reduced in accordance with SOP 50 10.
Borrower must pay a total of 6 payments of interest only on the disbursed principal balance beginning one month from the month this Note is dated and every month thereafter; payments must be made on the first calendar day in the months they are due.

Borrower must pay principal and interest payments of $60,170.72 every month, beginning seven months from the month this Note is dated; payments must be made on the first calendar day in the months they are due.
Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate first adjustment date (Float Date) is October 1, 2017.
The interest rate will be adjusted every calendar quarter (the "change period").

The "Prime Rate" is the Prime Rate in effect on the first business day of the month (as published in the Wall Street Journal newspaper) in which SBA received the application, or any interest rate change occurs.  Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.
The adjusted interest rate will be 2.75% above the Prime Rate.  Lender will adjust the interest rate on the first calendar day of each change period.  The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The spread as identified in the Note may not be changed during the life of the Loan without the written agreement of the Borrower.
For variable rate loans, the interest rate adjustment period may not be changed without the written consent of the Borrower.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default.  If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

Loan Prepayment:
Notwithstanding any provision in this Note to the contrary:
Borrower may prepay this Note.  Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice.  If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:
a. Give Lender written notice;
b. Pay all accrued interest; and
c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.
If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable 10 years from date of Note.

Late Charge:  If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment.

4. DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A. Fails to do anything required by this Note and other Loan Documents;

B. Defaults on any other loan with Lender;

C. Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D. Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E. Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F. Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G. Fails to pay any taxes when due;

H. Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I. Has a receiver or liquidator appointed for any part of their business or property;

J. Makes an assignment for the benefit of creditors;

K. Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L. Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M. Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.


5. LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A. Require immediate payment of all amounts owing under this Note;

B. Collect all amounts owing from any Borrower or Guarantor;

C. File suit and obtain judgment;

D. Take possession of any Collateral; or

E. Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.


6. LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A. Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B. Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C. Release anyone obligated to pay this Note;

D. Compromise, release, renew, extend or substitute any of the Collateral; and

E. Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7.   WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8.   SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9.   GENERAL PROVISIONS:

A.   All individuals and entities signing this Note are jointly and severally liable.

B.   Borrower waives all suretyship defenses.

C.   Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D.   Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E.   Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F.   If any part of this Note is unenforceable, all other parts remain in effect.

G.   To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

10.  STATE-SPECIFIC PROVISIONS:

Intentionally left blank.

11. BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

BORROWER:

COMMONWEALTH DIAGNOSTICS INTERNATIONAL, INC.

By: _____
    Craig S. Strasnick, President

COMMONWEALTH OF MASSACHUSETTS }
                               } ss.:
COUNTY OF  Essex               }

On this 20th day of September, 2017, before me appeared Craig S. Strasnick to me personally known, who, being by me duly sworn (or affirmed), did say that he is the President of Commonwealth Diagnostics International, Inc., and that said instrument was signed in behalf of said corporation by authority of its board of directors, and said Craig S. Strasnick acknowledged said instrument to be the free act and deed of said corporation.

_____
Notary Public

ALEXANDER J. CAPANO
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Oct. 17, 2019



U.S. Small Business Administration

## UNCONDITIONAL GUARANTEE

| SBA Loan # | PLP 97379950-01 |
|---|---|
| SBA Loan Name | Commonwealth Diagnostics International, Inc. |
| Guarantor | Common Ground Enterprises, LLC |
| Borrower | Commonwealth Diagnostics International, Inc. |
| Lender | Newtek Small Business Finance, LLC |
| Date | September 20, 2017 |
| Note Amount | $5,000,000.00 |

1.  GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note.  This Guarantee remains in effect until the Note is paid in full.  Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor.  Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.  NOTE:

The "Note" is the promissory note dated _____ September 20, 2017 _____ in the principal amount of _____ Five Million and 00/100 ($5,000,000.00) _____ Dollars, from Borrower to Lender.  It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.  DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:
   1) Require presentment, protest, or demand upon Borrower;
   2) Redeem any Collateral before or after Lender disposes of it;
   3) Have any disposition of Collateral advertised; and
   4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:
   1) Any default under the Note;
   2) Presentment, dishonor, protest, or demand;
   3) Execution of the Note;
   4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
   5) Any change in the financial condition or business operations of Borrower or any guarantor;
   6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
   7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:
   1) Lender failed to obtain any guarantee;
   2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
   3) Lender or others improperly valued or inspected the Collateral;
   4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;
6) Lender did not dispose of any of the Collateral;
7) Lender did not conduct a commercially reasonable sale;
8) Lender did not obtain the fair market value of the Collateral;
9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
11) Lender made errors or omissions in Loan Documents or administration of the Loan;
12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:
13) Lender impaired Guarantor's suretyship rights;
14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
15) Borrower has avoided liability on the Note;  or
16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

Intentionally left blank.

11.   GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12.   GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

COMMON GROUND ENTERPRISES, LLC

By: _____
    Brian J. Strasnick, Manager

By: _____
    Craig S. Strasnick, Manager

COMMONWEALTH OF MASSACHUSETTS }
                                } ss.:
COUNTY OF  Essex                 }

On this 20th day of September, 2017, before me appeared Brian J. Strasnick and Craig S. Strasnick to me personally known, who, being by me duly sworn (or affirmed), did say that they are the Managers of Common Ground Enterprises, LLC, and that said instrument was signed in behalf of said limited liability company by authority of its members, and said Brian J. Strasnick and Craig S. Strasnick acknowledged said instrument to be the free act and deed of said limited liability company.

_____
Notary Public

ALEXANDER J. CAPANO
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Oct. 17, 2019



U.S. Small Business Administration

## UNCONDITIONAL GUARANTEE

| SBA Loan # | PLP 97379950-01 |
|---|---|
| SBA Loan Name | Commonwealth Diagnostics International, Inc. |
| Guarantor | Common Ground Realty, LLC |
| Borrower | Commonwealth Diagnostics International, Inc. |
| Lender | Newtek Small Business Finance, LLC |
| Date | September 20, 2017 |
| Note Amount | $5,000,000.00 |

1.   GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note.  This Guarantee remains in effect until the Note is paid in full.  Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor.  Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.   NOTE:

The "Note" is the promissory note dated _____ September 20, 2017 _____ in the principal amount of

_____ Five Million and 00/100 ($5,000,000.00) . _____ Dollars,

from Borrower to Lender.  It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.   DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4.   LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.   Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.   Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.   Release any Borrower or any guarantor of the Note;

D.   Compromise or settle with the Borrower or any guarantor of the Note;

E.   Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F.   Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.   Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.   Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5.   FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.   RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.   Guarantor waives all rights to:
   1)   Require presentment, protest, or demand upon Borrower;
   2)   Redeem any Collateral before or after Lender disposes of it;
   3)   Have any disposition of Collateral advertised; and
   4)   Require a valuation of Collateral before or after Lender disposes of it.

B.   Guarantor waives any notice of:
   1)   Any default under the Note;
   2)   Presentment, dishonor, protest, or demand;
   3)   Execution of the Note;
   4)   Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
   5)   Any change in the financial condition or business operations of Borrower or any guarantor;
   6)   Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
   7)   The time or place of any sale or other disposition of Collateral.

C.   Guarantor waives defenses based upon any claim that:
   1)   Lender failed to obtain any guarantee;
   2)   Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
   3)   Lender or others improperly valued or inspected the Collateral;
   4)   The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note.  If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note;  or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7.   DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee.  Lender has no duty to preserve or dispose of any Collateral.

8.   SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9.   GENERAL PROVISIONS:

A.   ENFORCEMENT EXPENSES.  Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B.   SBA NOT A CO-GUARANTOR.  Guarantor's liability will continue even if SBA pays Lender.  SBA is not a co-guarantor with Guarantor.  Guarantor has no right of contribution from SBA.

C.   SUBROGATION RIGHTS.  Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D.   JOINT AND SEVERAL LIABILITY.  All individuals and entities signing as Guarantor are jointly and severally liable.

E.   DOCUMENT SIGNING.  Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F.   FINANCIAL STATEMENTS.  Guarantor must give Lender financial statements as Lender requires.

G.   LENDER'S RIGHTS CUMULATIVE, NOT WAIVED.  Lender may exercise any of its rights separately or together, as many times as it chooses.  Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H.   ORAL STATEMENTS NOT BINDING.  Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I.   SEVERABILITY.  If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J.   CONSIDERATION.  The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

Intentionally left blank.

11.  GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12.  GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.



COMMON GROUND REALTY, LLC

By: _____
Craig S. Strasnick, Manager

COMMONWEALTH OF MASSACHUSETTS }
                                                              } ss.:
COUNTY OF     Essex                              }

On this 20th day of September, 2017, before me appeared Craig S. Strasnick to me personally known, who, being by me duly sworn (or affirmed), did say that he is the Manager of Common Ground Realty, LLC, and that said instrument was signed in behalf of said limited liability company by authority of its members, and said Craig S. Strasnick acknowledged said instrument to be the free act and deed of said limited liability company.

_____
Notary Public

ALEXANDER J. CAPANO
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Oct. 17, 2019



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | PLP 97379950-01 |
|---|---|
| SBA Loan Name | Commonwealth Diagnostics International, Inc. |
| Guarantor | Common Ground Associates, LLC |
| Borrower | Commonwealth Diagnostics International, Inc. |
| Lender | Newtek Small Business Finance, LLC |
| Date | September 20, 2017 |
| Note Amount | $5,000,000.00 |

1.  GUARANTEE:

    Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.  NOTE:

    The "Note" is the promissory note dated _____September 20, 2017_____ in the principal amount of _____Five Million and 00/100 ($5,000,000.00)_____ Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.  DEFINITIONS:

    "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

    "Loan" means the loan evidenced by the Note.

    "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

    "SBA" means the Small Business Administration, an Agency of the United States of America.

4.   LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.   Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.   Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.   Release any Borrower or any guarantor of the Note;

D.   Compromise or settle with the Borrower or any guarantor of the Note;

E.   Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F.   Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.   Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.   Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5.   FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations.  Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes.  By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability.  As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.   RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.   Guarantor waives all rights to:
   1)   Require presentment, protest, or demand upon Borrower;
   2)   Redeem any Collateral before or after Lender disposes of it;
   3)   Have any disposition of Collateral advertised; and
   4)   Require a valuation of Collateral before or after Lender disposes of it.

B.   Guarantor waives any notice of:
   1)   Any default under the Note;
   2)   Presentment, dishonor, protest, or demand;
   3)   Execution of the Note;
   4)   Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
   5)   Any change in the financial condition or business operations of Borrower or any guarantor;
   6)   Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
   7)   The time or place of any sale or other disposition of Collateral.

C.   Guarantor waives defenses based upon any claim that:
   1)   Lender failed to obtain any guarantee;
   2)   Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
   3)   Lender or others improperly valued or inspected the Collateral;
   4)   The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;
6) Lender did not dispose of any of the Collateral;
7) Lender did not conduct a commercially reasonable sale;
8) Lender did not obtain the fair market value of the Collateral;
9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
11) Lender made errors or omissions in Loan Documents or administration of the Loan;
12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:
13) Lender impaired Guarantor's suretyship rights;
14) Lender modified the Note terms, other than to increase amounts due under the Note.  If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
15) Borrower has avoided liability on the Note;  or
16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7.   DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee.  Lender has no duty to preserve or dispose of any Collateral.

8.   SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9.   GENERAL PROVISIONS:

A.   ENFORCEMENT EXPENSES.  Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B.   SBA NOT A CO-GUARANTOR.  Guarantor's liability will continue even if SBA pays Lender.  SBA is not a co-guarantor with Guarantor.  Guarantor has no right of contribution from SBA.

C.   SUBROGATION RIGHTS.  Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D.   JOINT AND SEVERAL LIABILITY.  All individuals and entities signing as Guarantor are jointly and severally liable.

E.   DOCUMENT SIGNING.  Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F.   FINANCIAL STATEMENTS.  Guarantor must give Lender financial statements as Lender requires.

G.   LENDER'S RIGHTS CUMULATIVE, NOT WAIVED.  Lender may exercise any of its rights separately or together, as many times as it chooses.  Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H.   ORAL STATEMENTS NOT BINDING.  Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I.   SEVERABILITY.  If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J.   CONSIDERATION.  The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10.  STATE-SPECIFIC PROVISIONS:

Intentionally left blank.

11.   GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12.   GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

COMMON GROUND ASSOCIATES, LLC

By: _____
    Brian J. Strasnick, Manager

By: _____
    Gray W. Rifkin, Authorized Signatory

COMMONWEALTH OF MASSACHUSETTS }
                               } ss.:
COUNTY OF _____ Essex _____  }

On this 20th day of September, 2017, before me appeared Brian J. Strasnick and Gray W. Rifkin to me personally known, who, being by me duly sworn (or affirmed), did say that they are the Manager and Authorized Signatory of Common Ground Associates, LLC, and that said instrument was signed in behalf of said limited liability company by authority of its members, and said Brian J. Strasnick and Gray W. Rifkin acknowledged said instrument to be the free act and deed of said limited liability company.

_____
Notary Public

ALEXANDER J. CAPANO
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Oct. 17, 2019



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | PLP 97379950-01 |
|---|---|
| SBA Loan Name | Commonwealth Diagnostics International, Inc. |
| Guarantor | Craig S. Strasnick |
| Borrower | Commonwealth Diagnostics International, Inc. |
| Lender | Newtek Small Business Finance, LLC |
| Date | September 20, 2017 |
| Note Amount | $5,000,000.00 |

1.   GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note.  This Guarantee remains in effect until the Note is paid in full.  Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor.  Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.   NOTE:

The "Note" is the promissory note dated _____ September 20, 2017 _____ in the principal amount of

_____ Five Million and 00/100 ($5,000,000.00) _____ Dollars,

from Borrower to Lender.  It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.   DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4.   LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.   Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.   Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.   Release any Borrower or any guarantor of the Note;

D.   Compromise or settle with the Borrower or any guarantor of the Note;

E.   Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F.   Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.   Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.   Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5.   FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations.  Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes.  By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability.  As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.   RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.   Guarantor waives all rights to:
   1)   Require presentment, protest, or demand upon Borrower;
   2)   Redeem any Collateral before or after Lender disposes of it;
   3)   Have any disposition of Collateral advertised; and
   4)   Require a valuation of Collateral before or after Lender disposes of it.

B.   Guarantor waives any notice of:
   1)   Any default under the Note;
   2)   Presentment, dishonor, protest, or demand;
   3)   Execution of the Note;
   4)   Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
   5)   Any change in the financial condition or business operations of Borrower or any guarantor;
   6)   Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
   7)   The time or place of any sale or other disposition of Collateral.

C.   Guarantor waives defenses based upon any claim that:
   1)   Lender failed to obtain any guarantee;
   2)   Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
   3)   Lender or others improperly valued or inspected the Collateral;
   4)   The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7.  DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8.  SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9.  GENERAL PROVISIONS:

A.  ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B.  SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C.  SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D.  JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E.  DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F.  FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G.  LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H.  ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I.  SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J.  CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

Intentionally left blank.

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

_____

Craig S. Strasnick, Individually

COMMONWEALTH OF MASSACHUSETTS }
                                                                        } ss.:
COUNTY OF     Essex                                    }

On this 20th day of September, 2017, before me personally appeared Craig S. Strasnick, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his act and deed.

_____

Notary Public

ALEXANDER J. CAPANO
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Oct. 17, 2019



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | PLP 97379950-01 |
|---|---|
| SBA Loan Name | Commonwealth Diagnostics International, Inc. |
| Guarantor | Brian J. Strasnick |
| Borrower | Commonwealth Diagnostics International, Inc. |
| Lender | Newtek Small Business Finance, LLC |
| Date | September 20, 2017 |
| Note Amount | $5,000,000.00 |

1.  GUARANTEE:

    Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.  NOTE:

    The "Note" is the promissory note dated _____ September 20, 2017 _____ in the principal amount of _____ Five Million and 00/100 ($5,000,000.00) _____ Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.  DEFINITIONS:

    "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

    "Loan" means the loan evidenced by the Note.

    "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

    "SBA" means the Small Business Administration, an Agency of the United States of America.

4.   LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.   Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.   Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.   Release any Borrower or any guarantor of the Note;

D.   Compromise or settle with the Borrower or any guarantor of the Note;

E.   Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F.   Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.   Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.   Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5.   FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations.  Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes.  By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability.  As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.   RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.   Guarantor waives all rights to:
   1)   Require presentment, protest, or demand upon Borrower;
   2)   Redeem any Collateral before or after Lender disposes of it;
   3)   Have any disposition of Collateral advertised; and
   4)   Require a valuation of Collateral before or after Lender disposes of it.

B.   Guarantor waives any notice of:
   1)   Any default under the Note;
   2)   Presentment, dishonor, protest, or demand;
   3)   Execution of the Note;
   4)   Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
   5)   Any change in the financial condition or business operations of Borrower or any guarantor;
   6)   Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
   7)   The time or place of any sale or other disposition of Collateral.

C.   Guarantor waives defenses based upon any claim that:
   1)   Lender failed to obtain any guarantee;
   2)   Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
   3)   Lender or others improperly valued or inspected the Collateral;
   4)   The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;
6) Lender did not dispose of any of the Collateral;
7) Lender did not conduct a commercially reasonable sale;
8) Lender did not obtain the fair market value of the Collateral;
9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
11) Lender made errors or omissions in Loan Documents or administration of the Loan;
12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;
13) Lender impaired Guarantor's suretyship rights;
14) Lender modified the Note terms, other than to increase amounts due under the Note.  If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
15) Borrower has avoided liability on the Note;  or
16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7.   DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee.  Lender has no duty to preserve or dispose of any Collateral.

8.   SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9.   GENERAL PROVISIONS:

A.   ENFORCEMENT EXPENSES.  Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B.   SBA NOT A CO-GUARANTOR.  Guarantor's liability will continue even if SBA pays Lender.  SBA is not a co-guarantor with Guarantor.  Guarantor has no right of contribution from SBA.

C.   SUBROGATION RIGHTS.  Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D.   JOINT AND SEVERAL LIABILITY.  All individuals and entities signing as Guarantor are jointly and severally liable.

E.   DOCUMENT SIGNING.  Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F.   FINANCIAL STATEMENTS.  Guarantor must give Lender financial statements as Lender requires.

G.   LENDER'S RIGHTS CUMULATIVE, NOT WAIVED.  Lender may exercise any of its rights separately or together, as many times as it chooses.  Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H.   ORAL STATEMENTS NOT BINDING.  Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I.   SEVERABILITY.  If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J.   CONSIDERATION.  The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10.  STATE-SPECIFIC PROVISIONS:

Intentionally left blank.

11.  GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12.  GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

Brian J. Strasnick, Individually

COMMONWEALTH OF MASSACHUSETTS }
                                                         } ss.:
COUNTY OF        Essex                          }

On this 20th day of September, 2017, before me personally appeared Brian J. Strasnick, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his act and deed.

Notary Public

ALEXANDER J. CAPANO
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Oct. 17, 2019



U.S. Small Business Administration

# UNCONDITIONAL LIMITED GUARANTEE

| SBA Loan # | PLP 97379950-01 |
|---|---|
| SBA Loan Name | Commonwealth Diagnostics International, Inc. |
| Guarantor | The Cliff Road Realty Trust u/d/t July 16, 2013 |
| Borrower | Commonwealth Diagnostics International, Inc. |
| Lender | Newtek Small Business Finance, LLC |
| Date | September 20, 2017 |
| Note Amount | $5,000,000.00 |

1.   GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note, as limited below. Guarantor must pay all amounts owing under this Guarantee when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.   NOTE:

The "Note" is the promissory note dated _____September 20, 2017_____ in the principal amount of _____Five Million and 00/100 ($5,000,000.00)_____Dollars, from Borrower to Lender.   It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.   DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4.   PAYMENT LIMITATION: *(Check only one box)*

☐   BALANCE REDUCTION: The guarantee is of all amounts owing under the Note, and will continue until the total of all amounts owing under the Note is reduced below $ _____ , at which time Guarantor will be released from liability if the Note is not in default.

☐   PRINCIPAL REDUCTION: The guarantee is of all amounts owing under the Note,  and will continue until the outstanding principal balance of the Note is reduced below $ _____ , at which time Guarantor will be released from liability if the Note is not in default.

☐   MAXIMUM LIABILITY: The guarantee is limited to Guarantor's payment of  $ _____ .

☐   PERCENTAGE:  The guarantee is limited to Guarantor's payment of  _____ % of all  amounts owing under the Note at the time demand is first made on Guarantor, plus the same percentage of any accrued interest and other costs charged to the Note after demand, until Guarantor fully performs this Guarantee.

☐   TIME:   The guarantee is of all amounts owing under the Note.  The guarantee will continue until _____ years after the date of the Note (the "Guarantee Period").  If Borrower is in default at the end of the Guarantee Period, the guarantee will continue until all defaults are cured.

☑   COLLATERAL/RECOURSE: The guarantee is limited to the amount Lender obtains from the following Collateral pledged by Guarantor:

on land and improvements located at 72 Blodgett Avenue, Swampscott, MA 01907.

☐   COMMUNITY PROPERTY OR SPOUSAL INTEREST:  The guarantee is limited to Guarantor's community property or spousal interest in collateral pledged to secure the Note or any guarantee.

5.  **LENDER'S GENERAL POWERS:**

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.  Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.  Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.  Release any Borrower or any guarantor of the Note;

D.  Compromise or settle with the Borrower or any guarantor of the Note;

E.  Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F.  Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.  Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.  Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

6.  **FEDERAL LAW:**

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations.  Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes.  By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability.  As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

7.  **RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:**

To the extent permitted by law,

A.  Guarantor waives all rights to:
    1)  Require presentment, protest, or demand upon Borrower;
    2)  Redeem any Collateral before or after Lender disposes of it;
    3)  Have any disposition of Collateral advertised; and
    4)  Require a valuation of Collateral before or after Lender disposes of it.

B.  Guarantor waives any notice of:
    1)  Any default under the Note;
    2)  Presentment, dishonor, protest, or demand;
    3)  Execution of the Note;
    4)  Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
    5)  Any change in the financial condition or business operations of Borrower or any guarantor;
    6)  Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
    7)  The time or place of any sale or other disposition of Collateral.

C.  Guarantor waives defenses based upon any claim that:
    1)  Lender failed to obtain any guarantee;
    2)  Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
    3)  Lender or others improperly valued or inspected the Collateral;
    4)  The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

    5)   Lender impaired the Collateral;
    6)   Lender did not dispose of any of the Collateral;
    7)   Lender did not conduct a commercially reasonable sale;
    8)   Lender did not obtain the fair market value of the Collateral;
    9)   Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
    10)  The financial condition of Borrower or any guarantor was overstated or has adversely changed;
    11)  Lender made errors or omissions in Loan Documents or administration of the Loan;
    12)  Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;
    13)  Lender impaired Guarantor's suretyship rights;
    14)  Lender modified the Note terms, other than to increase amounts due under the Note.  If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
    15)  Borrower has avoided liability on the Note; or
    16)  Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

8.   DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee.  Lender has no duty to preserve or dispose of any Collateral.

9.   SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes successors, and Lender includes successors and assigns.

10.  GENERAL PROVISIONS:

A.   ENFORCEMENT EXPENSES.  Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B.   SBA NOT A CO-GUARANTOR.  Guarantor's liability will continue even if SBA pays Lender.  SBA is not a co-guarantor with Guarantor.  Guarantor has no right of contribution from SBA.

C.   SUBROGATION RIGHTS.  Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D.   JOINT AND SEVERAL LIABILITY.  All individuals and entities signing as Guarantor are jointly and severally liable.

E.   DOCUMENT SIGNING.  Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F.   FINANCIAL STATEMENTS.  Guarantor must give Lender financial statements as Lender requires.

G.   LENDER'S RIGHTS CUMULATIVE, NOT WAIVED.  Lender may exercise any of its rights separately or together, as many times as it chooses.  Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H.   ORAL STATEMENTS NOT BINDING.  Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I.   SEVERABILITY.  If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J.   CONSIDERATION.  The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

11. STATE-SPECIFIC PROVISIONS:

Intentionally left blank.

12. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

13. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

THE CLIFF ROAD REALTY TRUST u/d/t July 16, 2013

By: _____

Brian J. Strasnick, as Trustee

By: _____

Bonnie E. Strasnick, as Trustee

COMMONWEALTH OF MASSACHUSETTS }
                                } ss.:
COUNTY OF Essex                 }

On this 20th day of September, 2017, before me appeared Brian J. Strasnick and Bonnie E. Strasnick to me personally known, who, being by me duly sworn (or affirmed), did say that they are the Trustees of The Cliff Road Realty Trust u/d/t July 16, 2013, and that said instrument was signed in behalf of said trust by authority of its trustees, and said Brian J. Strasnick and Bonnie E. Strasnick acknowledged said instrument to be the free act and deed of said trust.

_____
Notary Public

ALEXANDER J. CAPANO
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Oct. 17, 2019



U.S. Small Business Administration

# UNCONDITIONAL LIMITED GUARANTEE

| SBA Loan # | PLP 97379950-01 |
|---|---|
| SBA Loan Name | Commonwealth Diagnostics International, Inc. |
| Guarantor | Bonnie E. Strasnick |
| Borrower | Commonwealth Diagnostics International, Inc. |
| Lender | Newtek Small Business Finance, LLC |
| Date | September 20, 2017 |
| Note Amount | $5,000,000.00 |

1. **GUARANTEE:**

   Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note, as limited below. Guarantor must pay all amounts owing under this Guarantee when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. **NOTE:**

   The "Note" is the promissory note dated _____September 20, 2017_____ in the principal amount of _____Five Million and 00/100 ($5,000,000.00)_____ Dollars, from Borrower to Lender.   It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. **DEFINITIONS:**

   "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

   "Loan" means the loan evidenced by the Note.

   "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

   "SBA" means the Small Business Administration, an Agency of the United States of America.

4.   PAYMENT LIMITATION: *(Check only one box)*

☐   BALANCE REDUCTION: The guarantee is of all amounts owing under the Note, and will continue until the total
of all amounts owing under the Note is reduced below $ _____ , at which time Guarantor
will be released from liability if the Note is not in default.

☐   PRINCIPAL REDUCTION: The guarantee is of all amounts owing under the Note,  and will continue until the
outstanding principal balance of the Note is reduced below $ _____ , at which time
Guarantor will be released from liability if the Note is not in default.

☐   MAXIMUM LIABILITY: The guarantee is limited to Guarantor's payment of  $ _____ .

☐   PERCENTAGE:  The guarantee is limited to Guarantor's payment of _____ % of all  amounts owing
under the Note at the time demand is first made on Guarantor, plus the same percentage of any accrued interest
and other costs charged to the Note after demand, until Guarantor fully performs this Guarantee.

☐   TIME:   The guarantee is of all amounts owing under the Note.  The guarantee will continue until
_____ years after the date of the Note (the "Guarantee Period").  If Borrower is in default at the end of the
Guarantee Period, the guarantee will continue until all defaults are cured.

☑   COLLATERAL/RECOURSE: The guarantee is limited to the amount Lender obtains from the
following Collateral pledged by Guarantor:

> on land and improvements located at 72 Blodgett Avenue, Swampscott, MA 01907.

☐   COMMUNITY PROPERTY OR SPOUSAL INTEREST:  The guarantee is limited to Guarantor's community
property or spousal interest in collateral pledged to secure the Note or any guarantee.

5.  LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.  Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.  Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.  Release any Borrower or any guarantor of the Note;

D.  Compromise or settle with the Borrower or any guarantor of the Note;

E.  Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F.  Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.  Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.  Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

6.  FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations.  Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes.  By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability.  As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

7.  RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.  Guarantor waives all rights to:
    1)  Require presentment, protest, or demand upon Borrower;
    2)  Redeem any Collateral before or after Lender disposes of it;
    3)  Have any disposition of Collateral advertised; and
    4)  Require a valuation of Collateral before or after Lender disposes of it.

B.  Guarantor waives any notice of:
    1)  Any default under the Note;
    2)  Presentment, dishonor, protest, or demand;
    3)  Execution of the Note;
    4)  Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
    5)  Any change in the financial condition or business operations of Borrower or any guarantor;
    6)  Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
    7)  The time or place of any sale or other disposition of Collateral.

C.  Guarantor waives defenses based upon any claim that:
    1)  Lender failed to obtain any guarantee;
    2)  Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
    3)  Lender or others improperly valued or inspected the Collateral;
    4)  The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;
6) Lender did not dispose of any of the Collateral;
7) Lender did not conduct a commercially reasonable sale;
8) Lender did not obtain the fair market value of the Collateral;
9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
11) Lender made errors or omissions in Loan Documents or administration of the Loan;
12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:
13) Lender impaired Guarantor's suretyship rights;
14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
15) Borrower has avoided liability on the Note; or
16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

8.   DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

9.   SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes successors, and Lender includes successors and assigns.

10.   GENERAL PROVISIONS:

A.   ENFORCEMENT EXPENSES.  Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B.   SBA NOT A CO-GUARANTOR.  Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C.   SUBROGATION RIGHTS.  Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D.   JOINT AND SEVERAL LIABILITY.  All individuals and entities signing as Guarantor are jointly and severally liable.

E.   DOCUMENT SIGNING.  Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F.   FINANCIAL STATEMENTS.  Guarantor must give Lender financial statements as Lender requires.

G.   LENDER'S RIGHTS CUMULATIVE, NOT WAIVED.  Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H.   ORAL STATEMENTS NOT BINDING.  Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I.   SEVERABILITY.  If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J.   CONSIDERATION.  The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

11.  STATE-SPECIFIC PROVISIONS:

Intentionally left blank.

12.  GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

13.  GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

Bonnie E. Strasnick, Individually

COMMONWEALTH OF MASSACHUSETTS }
                                                      } ss.:
COUNTY OF ___Essex___                   }

On this 20th day of September, 2017, before me personally appeared Bonnie E. Strasnick, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that she executed the same as her act and deed.

Notary Public

ALEXANDER J. CAPANO
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Oct. 17, 2019

NSBF/RID #: 111156/711071
OMB Control No: 3245-0201
SBA Application / Loan No 97379950-01

U.S. Small Business Administration

## RESOLUTION OF BOARD OF DIRECTORS OF COMMONWEALTH DIAGNOSTICS INTERNATIONAL, INC.

(1)  RESOLVED, that the officers of **Commonwealth Diagnostics International, Inc.** (hereinafter referred to as "Organization") named below, or any one of them, or their, or any one of their, duly elected or appointed successors in office, be and they are her eby authorized and empowered in the name and on behalf of this Organization to execute and deliver to the Small Business Administration, an agency of the Government of the United States of America (hereinafter called "SBA"), in the form required by SBA, the following documents:

(a) Application for a loan or loans, the total thereof not to exceed in principal amount Five Million and 00/100 ($5,000,000.00) Dollars, maturing upon such date or dates and bearing interest at such rate or rates as may be prescribed by SBA; (b) Applications for any renewals or extensions of all or any part of such loan or loans and of any other loans, heretofore or hereafter made by SBA to this Organization; (c) the Note or Notes of this Organization evidencing such loan or loans or any renewals or extensions thereof; and (d) any other Instruments or Agreements of this Organization which may be required by SBA in connection with such loans, renewals, and/or extensions; and that said officers in their discretion may accept any such loan or loans in installments and give one or more Notes of this Organization therefore, and may receive and endorse in the name of this Organization any checks or drafts representing such loan or loans or any such installments; (e) sign Guarantee of loan or loans in the principal amount of  **Five Million and 00/100 ($5,000,000.00)** Dollars to **COMMONWEALTH DIAGNOSTICS INTERNATIONAL, INC..**.

(2)  FURTHER RESOLVED, that the aforesaid officers or any one of them, or their duly elected or appointed successors in office, be and they are hereby authorized and empowered to do any acts, including but not limited to the mortgage, pledge, or hypothecation from time to time with SBA of any or all assets of this Organization to secure such loan or loans, renewals and extensions, and to execute in the name and on behalf of this Organization or otherwise, any Instruments or Agreements deemed necessary or proper by SBA, in respect of the collateral securing any indebtedness of this Organization;

(3)  FURTHER RESOLVED, that any indebtedness heretofore contracted and any Contracts or Agreements here tofore made with SBA on behalf of this Organization, and all acts of officers or agents of this Organization in connection with said indebtedness or said Contracts or Agreements, are hereby ratified and confirmed;

(4)  FURTHER RESOLVED, that the officers referred to in the foregoing resolutions are as follows:

| President | Craig S. Strasnick | |
|---|---|---|
| (Typewritten Name) | (Title) | (Signature) |
| | | |
| (Typewritten Name) | (Title) | (Signature) |

(5)  FURTHER RESOLVED, that SBA is authorized to rely upon the aforesaid resolutions until receipt of written notice of any change.

### CERTIFICATION

I HEREBY CERTIFY that the foregoing is a true and correct copy of a resolution regularly presented to and adopted by the Board of Directors of Commonwealth Diagnostics International, Inc. at a meeting duly called and held at a location designated by the Board on the 20th day of September, 2017, at which a quorum was present and voted, and that such resolution is duly recorded in the minute book of this corporation; that the officers named in said resolution have been duly elected or appointed to, and are the present incumbents of, the respective offices set after their respective names; and that the signatures set opposite their respective names are their true and genuine signatures.

Gray W. Rifkin, Secretary

PLEASE NOTE:  The estimated burden for completion of this form is 5 minutes per response.  You are not required to respond to this information collection unless it displays a currently valid OMB approval number.  Comments on the burden should be sent to U.S. Small Business Administration, Chief, Administrative Information Branch, Washington, D.C.  20416, and Desk Officer for SBA, Office of Management and Budget, New Exec. Office Building, Room 10202, Washington, D. C. 20503.  (3245-0201).

PLEASE DO NOT SEND FORMS TO OMB.

SBA FORM 160 (7-05) Previous editions obsolete

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

## U.S. SMALL BUSINESS ADMINISTRATION

### CONSENT OF MEMBERS OF
### COMMON GROUND ENTERPRISES, LLC

We, the undersigned, being all the members of Common Ground Enterprises, LLC, a Massachusetts limited liability company (the "Company") do hereby consent, certify, ratify, approve and adopt the following:

THAT THE COMPANY EXECUTE, ACKNOWLEDGE AND DELIVER to Newtek Small Business Finance, LLC (the "Lender") a Promissory Note in the principal amount of Five Million and 00/100 ($5,000,000.00) Dollars (the "Note") to evidence a certain loan made by the Lender to the Company; that the Company execute, acknowledge and deliver to the Lender or the U.S. Small Business Administration (the "SBA"), as the case may be, in the form required by Lender or SBA, the following documents: (a) application for a loan or loans, the total thereof not to exceed in principal amount Five Million and 00/100 ($5,000,000.00) Dollars, maturing upon such date or dates and bearing interest at such rate or rates as may be prescribed by Lender or SBA; (b) applications for any renewals or extensions of all or any part of such loan or loans and of any other instruments or agreements of the Company which may be required by Lender or SBA in connection with such loans, renewals, and/or extensions; and that said members in their discretion may accept any such loan or loans in installments and give one or more notes of the Company therefor, and may receive and endorse in the name of the Company any checks or drafts representing such loan or loans or any such installments;

Acts done in the name of or on behalf of the Company, by Brian J. Strasnick and Craig S. Strasnick shall be binding on the Company.

This statement is signed and the foregoing representations are made in order to induce Newtek Small Business Finance, LLC and/or the Small Business Administration (hereinafter "SBA"): to consider applications for a loan or loans to the Company when signed by Brian J. Strasnick and Craig S. Strasnick; to make a loan or loans to said Company against a promissory note or promissory notes signed in the Company name by Brian J. Strasnick and Craig S. Strasnick; to accept as security for the payment of such note or notes any collateral which may be offered by Brian J. Strasnick and Craig S. Strasnick; to consider applications signed in the Company name by any one of us for any renewals or extensions for all or any part of such loan or loans and any other loan or loans heretofore or hereafter made by Lender or SBA to said firm; to accept any other instruments or agreements of said firm which may be required by Lender or SBA in connection with such loan, renewals, or extensions when signed by Brian J. Strasnick and Craig S. Strasnick.

Any indebtedness heretofore contracted and any contracts or agreements heretofore made with Lender or SBA on behalf of the Company and all acts of members or agents of the Company in connection with said indebtedness or said contracts or agreements are hereby ratified and confirmed.

Brian J. Strasnick and Craig S. Strasnick are authorized to mortgage and/or pledge all or

1

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

any part of the property, real, personal, or mixed, of said firm as security for any such loan.

This statement and representations made herein are in no way intended to exclude the general authority of each member as to any acts not specifically mentioned or to limit the power of any member to bind the Company and each and every member individually.

Lender or SBA is authorized to rely upon the aforesaid statements until receipt of written notice of any change.

COMMON GROUND REALTY, LLC

By: _____
    Craig S. Strasnick, Manager

COMMON GROUND ASSOCIATES, LLC

By: _____
    Brian J. Strasnick, Manager

By: _____
    Gray W. Rifkin, Authorized Signatory

COMMONWEALTH OF MASSACHUSETTS        }
                                     }      ss.:
COUNTY OF _____Essex_____     }

On this 20th day of September, 2017, before me appeared Craig S. Strasnick to me personally known, who, being by me duly sworn (or affirmed), did say that he is the Manager of Common Ground Realty, LLC, and that said instrument was signed in behalf of said limited liability company by authority of its members, and said Craig S. Strasnick acknowledged said instrument to be the free act and deed of said limited liability company.

_____
Notary Public

ALEXANDER J. CAPANO
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Oct. 17, 2019

111156 - 711071 - SBA Form Consent of Members - Common Ground Enterprises, LLC

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

COMMONWEALTH OF MASSACHUSETTS      }
                                   }    ss.:
COUNTY OF ___Essex___              }

On this 20th day of September, 2017, before me appeared Brian J. Strasnick and Gray W. Rifkin
to me personally known, who, being by me duly sworn (or affirmed), did say that they are the
Manager and Authorized Signatory of Common Ground Associates, LLC, and that said
instrument was signed in behalf of said limited liability company by authority of its members,
and said Brian J. Strasnick and Gray W. Rifkin acknowledged said instrument to be the free act
and deed of said limited liability company.

_____
Notary Public

ALEXANDER J. CAPANO
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Oct. 17, 2019

111156 - 711071 - SBA Form Consent of Members - Common Ground Enterprises, LLC

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

## U.S. SMALL BUSINESS ADMINISTRATION

### CONSENT OF SOLE MEMBER OF
### COMMON GROUND REALTY, LLC

The undersigned, being the sole member of Common Ground Realty, LLC, a Massachusetts limited liability company (the "Company") does hereby consent, certify, ratify, approve and adopt the following:

THAT THE COMPANY EXECUTE, ACKNOWLEDGE AND DELIVER to Newtek Small Business Finance, LLC (the "Lender") a Promissory Note in the principal amount of Five Million and 00/100 ($5,000,000.00) Dollars (the "Note") to evidence a certain loan made by the Lender to the Company; that the Company execute, acknowledge and deliver to the Lender or the U.S. Small Business Administration (the "SBA"), as the case may be, in the form required by Lender or SBA, the following documents: (a) application for a loan or loans, the total thereof not to exceed in principal amount Five Million and 00/100 ($5,000,000.00) Dollars, maturing upon such date or dates and bearing interest at such rate or rates as may be prescribed by Lender or SBA; (b) applications for any renewals or extensions of all or any part of such loan or loans and of any other instruments or agreements of the Company which may be required by Lender or SBA in connection with such loans, renewals, and/or extensions; and that said members in their discretion may accept any such loan or loans in installments and give one or more notes of the Company therefor, and may receive and endorse in the name of the Company any checks or drafts representing such loan or loans or any such installments;

That Acts done in the name of or on behalf of the Company, by Craig S. Strasnick shall be binding on the Company.

This statement is signed and the foregoing representations are made in order to induce Newtek Small Business Finance, LLC (hereinafter "Lender") and/or the Small Business Administration (hereinafter "SBA"): to consider applications for a loan or loans to the Company when signed by Craig S. Strasnick; to make a loan or loans to said Company against a promissory note or promissory notes signed in the Company name by Craig S. Strasnick; to accept as security for the payment of such note or notes any collateral which may be offered by Craig S. Strasnick; to consider applications signed in the Company name by any one of us for any renewals or extensions for all or any part of such loan or loans and any other loan or loans heretofore or hereafter made by Lender or SBA to said firm; to accept any other instruments or agreements of said firm which may be required by Lender or SBA in connection with such loan, renewals, or extensions when signed by Craig S. Strasnick.

Any indebtedness heretofore contracted and any contracts or agreements heretofore made with Lender or SBA on behalf of the Company and all acts of members or agents of the Company in connection with said indebtedness or said contracts or agreements are hereby ratified and confirmed.

Craig S. Strasnick is authorized to mortgage and/or pledge all or any part of the property, real, personal, or mixed, of said firm as security for any such loan.

1

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

This statement and representations made herein are in no way intended to exclude the general authority of each member as to any acts not specifically mentioned or to limit the power of any member to bind the Company and each and every member individually.

Lender or SBA is authorized to rely upon the aforesaid statements until receipt of written notice of any change.

_____
Craig S. Strasnick, Individually

COMMONWEALTH OF MASSACHUSETTS }
                                                          }    ss.:
COUNTY OF _____Essex_____ }

On this 20th day of September, 2017, before me personally appeared Craig S. Strasnick, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his act and deed.

_____
Notary Public

ALEXANDER J. CAPANO
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Oct. 17, 2019

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

### U.S. SMALL BUSINESS ADMINISTRATION

### CONSENT OF SOLE MEMBER OF
### COMMON GROUND ASSOCIATES, LLC

The undersigned, being the sole member of Common Ground Associates, LLC, a Massachusetts limited liability company (the "Company") does hereby consent, certify, ratify, approve and adopt the following:

THAT THE COMPANY EXECUTE, ACKNOWLEDGE AND DELIVER to Newtek Small Business Finance, LLC (the "Lender") a Promissory Note in the principal amount of Five Million and 00/100 ($5,000,000.00) Dollars (the "Note") to evidence a certain loan made by the Lender to the Company; that the Company execute, acknowledge and deliver to the Lender or the U.S. Small Business Administration (the "SBA"), as the case may be, in the form required by Lender or SBA, the following documents: (a) application for a loan or loans, the total thereof not to exceed in principal amount Five Million and 00/100 ($5,000,000.00) Dollars, maturing upon such date or dates and bearing interest at such rate or rates as may be prescribed by Lender or SBA; (b) applications for any renewals or extensions of all or any part of such loan or loans and of any other instruments or agreements of the Company which may be required by Lender or SBA in connection with such loans, renewals, and/or extensions; and that said members in their discretion may accept any such loan or loans in installments and give one or more notes of the Company therefor, and may receive and endorse in the name of the Company any checks or drafts representing such loan or loans or any such installments;

That Acts done in the name of or on behalf of the Company, by Brian J. Strasnick shall be binding on the Company.

This statement is signed and the foregoing representations are made in order to induce Newtek Small Business Finance, LLC (hereinafter "Lender") and/or the Small Business Administration (hereinafter "SBA"): to consider applications for a loan or loans to the Company when signed by Brian J. Strasnick; to make a loan or loans to said Company against a promissory note or promissory notes signed in the Company name by Brian J. Strasnick; to accept as security for the payment of such note or notes any collateral which may be offered by Brian J. Strasnick; to consider applications signed in the Company name by any one of us for any renewals or extensions for all or any part of such loan or loans and any other loan or loans heretofore or hereafter made by Lender or SBA to said firm; to accept any other instruments or agreements of said firm which may be required by Lender or SBA in connection with such loan, renewals, or extensions when signed by Brian J. Strasnick.

Any indebtedness heretofore contracted and any contracts or agreements heretofore made with Lender or SBA on behalf of the Company and all acts of members or agents of the Company in connection with said indebtedness or said contracts or agreements are hereby ratified and confirmed.

Brian J. Strasnick is authorized to mortgage and/or pledge all or any part of the property, real, personal, or mixed, of said firm as security for any such loan.

1

111156 - 711071 - SBA Form Consent of Sole Member - Common Ground Associates, LLC

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

This statement and representations made herein are in no way intended to exclude the general authority of each member as to any acts not specifically mentioned or to limit the power of any member to bind the Company and each and every member individually.

Lender or SBA is authorized to rely upon the aforesaid statements until receipt of written notice of any change.

_____
Brian J. Strasnick, Individually

COMMONWEALTH OF MASSACHUSETTS   }
                                }   ss.:
COUNTY OF _____Essex_____ }

On this 20th day of September, 2017, before me personally appeared Brian J. Strasnick, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his act and deed.

_____
Notary Public

ALEXANDER J. CAPANO
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Oct. 17, 2019

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

## TRUSTEE'S CERTIFICATION

In connection with a loan made on or about September 20, 2017 in the original principal amount of Five Million and 00/100 ($5,000,000.00) Dollars (hereinafter the "Loan") made by Newtek Small Business Finance, LLC (hereinafter the "Lender") to Commonwealth Diagnostics International, Inc. (hereinafter the "Borrower") in cooperation with the United States Small Business Administration (hereinafter the "SBA"), the undersigned, Brian Strasnick and Bonnie Strasnick hereby certify that:

1. We are the trustees of The Cliff Road Realty Trust u/d/t July 16, 2013, recorded with the Essex South Registry of Deeds at Book 32795, Page 535, as affected by Resignation and Appointment filed with the Essex South Registry District of the Land Court as Document 565911 and 565910 (hereinafter the "Trust") and have authority to act on behalf of the Trust, which authority has not been revoked;

2. The trust is in full force and effect and has not been altered, amended or revoked, and will not be revoked or substantially amended for the term of the Loan without the consent of Lender or SBA;

3. We are empowered by the terms of the Trust, and have been directed by the beneficiaries of the Trust, to borrow funds, guarantee loans, and pledge trust assets on behalf of the Trust;

4. If the Borrower is an Eligible Passive Company (as defined by the Small Business Act), the Trustees have the authority to lease the property to the Operating Company

5. There is nothing in the Trust Agreement that would prevent Lender from realizing on any security interest in the trust assets.

6. The Trust Agreement has specific language confirming the above representations; and

7. The Trustees have provided and will continue to provide Lender and SBA with a true and complete list of all trustors and donors.

_____
Brian Strasnick, as Trustee

_____
Bonnie Strasnick, as Trustee

1

111156 - 711071 - Trustee Certification - Commonwealth
Diagnostics International Inc_

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

COMMONWEALTH OF MASSACHUSETTS        }
                                     }        ss.:
COUNTY OF ___Essex_____        }

On this 20th day of September, 2017, before me personally appeared Brian  Strasnick, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his act and deed as Trustee of said Trust.

_____
Notary Public

ALEXANDER J. CAPANO
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Oct. 17, 2019

COMMONWEALTH OF MASSACHUSETTS        }
                                     }        ss.:
COUNTY OF ___Essex_____        }

On this 20th day of September, 2017, before me personally appeared Bonnie  Strasnick, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that she executed the same as her act and deed, as Trustee of said Trust.

_____
Notary Public

ALEXANDER J. CAPANO
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Oct. 17, 2019

111156 - 711071 - Trustee Certification - Commonwealth
Diagnostics International Inc_

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

> *The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:*
>
> *(a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.*
>
> *(b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan. Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.*

## SECURITY AGREEMENT

This **SECURITY AGREEMENT** dated September 21, 2017 (the "Security Agreement"), by and between **COMMONWEALTH DIAGNOSTICS INTERNATIONAL, INC.**, a Delaware corporation maintaining a principal place of business located at 39 Norman Street, Salem, MA 01970 (the "Debtor") and **NEWTEK SMALL BUSINESS FINANCE, LLC**, a New York limited liability company maintaining a place of business at 1981 Marcus Avenue, Suite 130, Lake Success, NY 11042 (the "Secured Party").

WHEREAS, Secured Party has been asked to provide financing for Commonwealth Diagnostics International, Inc. ("Borrower"), which financing is evidenced by the Loan Agreement and promissory Note of even date herewith made by Borrower to Secured Party in the amount of Five Million and 00/100 ($5,000,000.00) Dollars (the "Note").

NOW, THEREFORE, for value received and in consideration of the foregoing and to induce Secured Party to grant such financing, the Debtor hereby pledges, assigns, transfers, sets over and grants to Secured Party a continuing general lien and security interest in the Collateral described below.

1.     **Security Interest Granted and Obligation Secured.**

    (a)     **Security for Obligation.** This Security Agreement secures the payment of all now existing or hereafter arising obligations of Debtor to Secured Party under the Note and related documents, whether primary or secondary, direct or indirect, absolute or contingent, joint or several, secured or unsecured, due or not, liquidated or unliquidated, arising by operation of law or otherwise under any promissory note, guarantee, loan or credit agreement, letter of credit, draft, acceptance, interest rate or foreign exchange agreement, mortgage or other documents evidencing indebtedness whether for principal, interest, fees, expenses or otherwise, together with all costs of collection or enforcement, including, without limitation, reasonable attorneys' fees incurred in any collection efforts or in any action or proceeding (all such obligations being the "Obligations"). Without limiting the foregoing, the Obligations include all obligations of Borrower under the Note; and all obligations of Debtor under the guaranty instruments made by Debtor in favor of the Secured Party, and dated the date hereof, guaranteeing payment and performance by Borrower

1

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

under the Note.

(b) <u>Grant of Security.</u>   As security for the Obligations, Debtor hereby grants to Secured Party a Purchase Money Security Interest in any asset purchased by Debtor with loan proceeds as well as a general security interest in **all of Debtor's right, title and interest in all personal property of Debtor, now owned and hereafter acquired, whether or not purchased with loan proceeds (Purchase Money Security Interest), of every kind and description wherever located, including, without limitation: all accounts and accounts receivable, general intangibles, chattel paper whether tangible or electronic, instruments including promissory notes, documents, goods including raw materials, work-in-process and finished goods including embedded software and all accessions to any goods; machinery, furniture, inventory, equipment and fixtures, intellectual property of any kind or nature including trademarks, servicemarks, patents and copyrights whether or not recorded or registered, liquor licenses, business licenses, letter of credit rights whether or not the letter of credit is evidenced by a writing, financial assets and investment property, deposit accounts whether or not maintained at Secured Party, commercial tort claims, supporting obligations, and any and all products and proceeds of any of the foregoing, whether now existing or hereafter arising or acquired in and to any and all items of personal property, together with all attachments, accessions and equipment now or hereafter affixed thereto or used in connection therewith, all substitutions and replacements thereof and any products and proceeds thereof (the "Collateral").**

(c) <u>Debtor Remains Liable</u>. This Security Agreement shall not affect Debtor's liability to perform all of its duties and obligations under the transactions giving rise to the Obligations. The exercise by Secured Party of any of the rights hereunder shall not release Debtor from any of its duties or obligations under the transactions giving rise to the Obligations, which shall remain unchanged as if this Security Agreement had not been executed. Secured Party shall not have any obligation or liability under the transactions giving rise to the Obligations by reason of this Security Agreement, nor shall Secured Party be obligated to perform any of the obligations or duties of Debtor thereunder or to take any action to collect or enforce any claim for payment assigned hereunder.

(d) <u>Continuing Agreement.</u> This Security Agreement shall create a continuing security interest in the Collateral and shall remain in full force and effect until payment in full of the Obligations.

**2.** <u>**Debtor's Title; Liens and Encumbrances.**</u>  Debtor represents and warrants that Debtor is, or will be, the owner of the Collateral, having good and marketable title thereto, free from any and all liens, security interests, encumbrances and claims, except as set forth herein. Debtor will not create, assume or permit to exist any such lien, security interest, encumbrance or claim on or against the Collateral except as permitted by this Security Agreement, and Debtor will promptly notify Secured Party of any such other claim, lien, security interest or other encumbrance made or asserted against the Collateral and will defend the Collateral against any such claim, lien, security interest or other encumbrance.

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

3.    **Representations and Warranties; Location of Collateral and Records;
      Business and Trade Names of Debtor.**

(a)  Debtor shall at all times maintain its records as to the Collateral at its chief place of business at the address referred to hereinabove. Debtor further covenants that, except for Collateral delivered to Secured Party or an agent for Secured Party, Debtor will not store, use or locate any of the Collateral at any place other than as listed in the Agreement.

(b)  Debtor currently uses, and during the last five years has used, no business or trade names, except as set forth herein. Debtor shall promptly notify Secured Party, in sufficient detail, of any changes in, additions to, or deletions from the business or trade names used by Debtor for billing purposes.

(c)  The Collateral is now and will be used in Debtor's business and not for personal, family, household or family use.

(d)  Debtor has paid and will continue to pay or otherwise provide for the payment when due, of all taxes, assessments or contributions required by law which have been or may be assessed or levied against Debtor, whether with respect to any of the Collateral, to any wages or salaries paid by Debtor, or otherwise, and will deliver satisfactory proof of such payment to Secured Party on demand. In the event the Debtor shall fail to pay any such tax, assessment, levy or governmental charge or to discharge any such lien or contest the same in good faith, then the Secured Party, without waiving or releasing any obligation or default of the Debtor hereunder, may at any time or times hereafter, but shall be under no obligation to do so, upon prior written notice to Debtor, make such payment, settlement, compromise or release or cause to be released any such lien, and take any other action with respect thereto which the Secured Party deems advisable. All sums paid by the Secured Party in satisfaction of, or on account of any tax, levy or assessment or governmental charge, or to discharge or release any lien and any expenses, including reasonable attorneys' fees, court costs and other charges relating thereto, shall become a part of the Liabilities secured by the Collateral, payable on demand.

(e)  The grant of the security interest in the Collateral is effective to vest in Secured Party a valid priority security interest, superior to the rights of any person in and to the Collateral as set forth herein.

4.    **Perfection of Security Interest.**

Debtor shall to the extent necessary execute all such financing statements pursuant to the Uniform Commercial Code or other notices appropriate under applicable law, including the Federal Assignment of Claims Act and any state motor vehicles registration statute, as Secured Party may require, each in form satisfactory to Secured Party. Debtor also shall pay all filing or recording costs with respect thereto, and all costs of filing or recording this Security Agreement or any other agreement or document executed and delivered pursuant hereto or to the Obligations (including the cost of all federal, state or local mortgage, documentary, stamp or other taxes), in each case, in all public offices where filing or recording is deemed by Secured Party to be necessary or desirable. Debtor authorizes Secured Party to (i) file any Uniform Commercial Code financing statements or amendments thereto without the signature of Debtor or by signing of Debtor's name

3

to any such financing statements as its attorney-in-fact, (ii) file a photographic or other reproduction of this Security Agreement as a financing statement, (iii) file notices of assignment pursuant to the Federal Assignment of Claims Act, (iv) file applications for certificates of title or (v) take all other action which Secured Party may deem necessary or desirable to perfect or otherwise protect the liens and security interests created hereunder and to obtain the benefits of this Security Agreement.

5.   **General Covenants.**

Debtor shall:

(a)   furnish Secured Party from time to time, at Secured Party's request, written statements and schedules further identifying and describing the Collateral in such detail as Secured Party may reasonably require;

(b)   advise Secured Party promptly, in sufficient detail, of any substantial change in the Collateral or of the occurrence of any event which would affect the value of the Collateral or Secured Party's security interest therein;

(c)   comply with all acts, rules, regulations and orders of any legislative, administrative or judicial body or official applicable to Debtor or any Collateral or to the operation of Debtor's business except where the failure to comply (i) is non-material and (ii) has no effect on the value of the Collateral or on the ability of Secured Party to exercise its rights and remedies hereunder;

(d)   perform and observe all covenants, restrictions and conditions contained in any agreement or document executed in connection with the Obligations as though the same were fully set forth in this Security Agreement;

(e)   promptly execute and deliver to Secured Party such further agreements or other instruments and take such further action from time to time as Secured Party may deem necessary to perfect, protect or enforce its security interests in the Collateral or otherwise to effect the intent of this Security Agreement;

(f)   keep or cause to be kept the Collateral in good working order and marketable condition, ordinary wear and tear excepted;

(g)   insure the Collateral against loss or damage by fire or other hazards, and extended coverage, theft, burglary, bodily injury and such other risks, with such companies and in such amounts, as is required by Secured Party at any time;

(h)   use the Collateral for lawful purposes only in conformity with all laws, rules and regulations;

(i)   allow Secured Party and its agents, at reasonable times and for reasonable durations, to inspect any of the Collateral and to examine and make extracts from Debtor's books and records relating to the Collateral; provided, however, all information examined in and extracted from Debtor's books and records shall be treated as Confidential Information and should

4

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

be treated in the same manner that Secured Party treats its own Confidential Information; and

(j)     not assign, sell, mortgage, lease, transfer, pledge, grant a security interest in or lien upon, encumber or otherwise dispose of or abandon, any part or all of the Collateral, without the express prior written consent of Secured Party, except for the sale from time to time in the ordinary course of business of Debtor of such items of Collateral as may constitute part of the business inventory of Debtor.

## 6.    Assignment of Insurance.

At or prior to the date hereof, Debtor shall deliver to Secured Party certificates of the issuing companies with respect to all policies of insurance owned by Debtor covering or in any manner relating to the Collateral, in form and substance satisfactory to Secured Party, naming Secured Party as an additional insured party as its interests may appear with respect to liability coverage and as loss payee with respect to property and extended insurance coverage, and indicating that no such policy will be terminated, or reduced in coverage or amount, without at least thirty (30) days prior written notice from the insurer to Secured Party. Debtor hereby assigns to Secured Party all sums, including returned or unearned premiums, which may become payable under or in respect of any such policy of insurance, and Debtor hereby directs each insurance company issuing any such policy to make payment of sums directly to Secured Party. Debtor hereby appoints Secured Party as Debtor's attorney-in-fact with authority to endorse any check or draft representing any such payment and to execute any proof of claim, subrogation receipt and any other document required by such insurance company as a condition to or otherwise in connection with such payment, and upon the occurrence of any Event of Default, to cancel, assign or surrender any such policies. All such sums received by Secured Party shall be applied by Secured Party to satisfaction of the Obligations or, to the extent that such sums represent unearned premiums in respect of any policy of insurance on the Collateral refunded by     reason of cancellation, toward payment for similar insurance protecting the respective interests of Debtor and Secured Party, or as otherwise required by applicable law.

If the Debtor shall at any time or times hereafter fail to obtain and maintain any of the policies of insurance required above, or fail to pay any premium in whole or in part relating to any such policies, then the Secured Party may, but it shall have no obligation to do so, following prior written notice to Debtor, obtain and cause to be maintained any or all of such policies, and pay any part or all of the premiums due thereon without thereby waiving any default by the Debtor and any sum so disbursed by the Secured Party shall become a part of the Liabilities secured by the Collateral payable on demand.

## 7.    Fixtures.

Except to the extent that fixtures are included in the description of the Collateral herein, it is the intent of Debtor and Secured Party that none of the Collateral is or shall be regarded as fixtures, as that term is used or defined in Article 9 of the Uniform Commercial Code, and Debtor represents and warrants that it has not made and is not bound by any lease or other agreement which is inconsistent with such intent. Nevertheless, if the Collateral or any part thereof deemed material by Secured Party is or is to become attached or affixed to any real estate, Debtor will, upon request, furnish Secured Party with a disclaimer or subordination in form satisfactory to

5

Secured Party of the holder of any interest in the real estate to which the Collateral is attached or affixed, together with the names and addresses of the record owners of, and all other persons having interest in, and a general description of, such real estate.

## 8.     Collections.

(a)     Except as provided herein, Debtor may collect all checks, drafts, cash or other remittances (i) in payment of any of its accounts, contract rights or general intangibles constituting part of the Collateral, (ii) in payment of any Collateral sold, transferred, leased or otherwise disposed of, or (iii) in payment of or in account of its accounts, contracts, notes, drafts, acceptances and all other forms of obligations relating to any of the Collateral so sold, transferred, or leased or otherwise disposed of. All of the foregoing amounts so collected after the occurrence of an Event of Default shall be held in trust by Debtor for and as the property of Secured Party, and shall not be commingled with other funds, money or property of Debtor.

(b)     Upon the request of Secured Party, Debtor will immediately upon receipt of all such checks, drafts, cash or other remittances in payment of any of its accounts, contract rights or general intangibles constituting part of the Collateral or in payment for any Collateral sold, transferred, leased or otherwise disposed of, deliver any such items to Secured Party accompanied by a remittance report in form supplied or approved by Secured Party. Debtor shall deliver such items in the same form received, endorsed or otherwise assigned by Debtor where necessary to permit collection of such items.

(c)     Upon the request of Secured Party, Debtor will promptly notify Secured Party in writing of the return or rejection of any goods represented by any accounts, contract rights or general intangibles and Debtor shall forthwith account therefor to Secured Party in cash without demand or notice. Until such payment has been received by Secured Party, Debtor will receive and hold all such goods separate and apart, in trust for and subject to the security interest in favor of Secured Party, and Secured Party is authorized to sell, for Debtor's account and at Debtor's sole risk, all or any part of such goods.

(d)     In its discretion, Secured Party may, upon the occurrence of an Event of Default, in its name or Debtor's or otherwise, notify any account debtor or Debtor of any account, contract, instrument, chattel paper or general intangible included in the Collateral to make payment to Secured Party.

(e)     All of the foregoing remittances shall be applied and credited by Secured Party in accordance with the provisions of Section 10(c) of this Security Agreement.

## 9.     Events of Default.

The occurrence of any one or more of the following events shall constitute an event of default ("Event of Default") by Debtor under this Security Agreement:

(a) a "Default" or "Event of Default" shall occur under the terms of the Note or any other agreement giving rise to or executed in connection with the Obligations;

6

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

(b) if at any time Secured Party shall, in its reasonable discretion, consider the Obligations insecure or any part of the Collateral unsafe, insecure or insufficient, and Debtor shall not on demand furnish other collateral or make payment on account, reasonably satisfactory to Secured Party;

(c) if Debtor or any obligor, guarantor of, or any party to any of the Obligations or the Collateral (the same, including Debtor, being collectively referred to herein as "Debtors") shall default in the punctual payment of any sum payable with respect to, or in the observance or performance of any of the terms and conditions of any of the Obligations or of this Security Agreement or any other agreement between any Debtor and Secured Party;

(d) if any warranty or representation made to Secured Party by or on behalf of any Debtor is false or misleading in any material respect;

(e) in the event of loss, theft, substantial damage to or destruction of any portion of the Collateral deemed material by Secured Party, or the making or filing of any lien, levy, execution on, or seizure, attachment or garnishment of, any of the Collateral;

(f) if any of the Debtors being a natural person or any general partner or member of an Debtor which is a partnership or a limited liability company, shall die or (being a partnership, limited liability company or corporation) shall be dissolved, or if any of the Debtors (if an entity) shall fail to maintain its existence in good standing;

(g) if any of the Debtors shall become insolvent or make an assignment for the benefit of creditors, or make or send notice of an intended bulk transfer, or if there shall be convened a meeting of the creditors or principal creditors of any of the Debtors or if a committee of creditors is appointed for any of them;

(h) if there shall be filed by or against any of the Debtors any petition for any relief under the bankruptcy laws of the United States now or hereafter in effect or under any insolvency, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction now or hereafter in effect (whether at law or in equity);

(i) if the usual business of any of the Debtors shall be terminated or suspended;

(j) if any proceedings, procedure or remedy supplementary to or in enforcement of judgment shall be commenced against, or with respect to any property of, any of the Debtors;

(k) if any petition or application to any court or tribunal, at law or in equity, be filed by or against any of the Debtors for the appointment of any receiver or trustee for any of the Debtors or any part of the property of any of them;

(l) if there occur the sale, lease, transfer, assignment, encumbrance (except by purchase money liens on property acquired after the date of the Note) or other disposition of any of the Collateral to a third party, except in the ordinary course of business, without the prior written consent of the Secured Party; or

(m) if there is a change of the ownership structure or interests of the Debtor during the term of the loan evidenced by the Note without the prior written consent of the Secured Party.

10.   **Rights and Remedies.**

(a)      In the event of the occurrence and continuance of any Event of Default, Secured

7

111156 - 711071 - General Security Agreement - Commonewealth Diagnostics International, Inc.

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

Party shall at any time thereafter have the right, with or without (to the extent permitted by applicable law) notice to Debtor, as to any or all of the Collateral, by any available judicial procedure or without judicial process, to take possession of the Collateral and without liability for trespass to enter any premises where the Collateral may be located for the purpose of taking possession of or removing the Collateral, and generally to exercise any and all rights afforded to a secured party under the Uniform Commercial Code or other applicable law. Without limiting the generality of the foregoing, Debtor agrees that Secured Party shall have the right to sell, lease, or otherwise dispose of all or any part of the Collateral, whether in its then condition or after further preparation or processing, either at public or private sale or at any broker's board, in lots or in bulk, for cash or for credit, with or without warranties or representations, and upon such terms and conditions, all as Secured Party in its sole discretion may deem advisable, and Secured Party shall have the right to purchase at any such sale; and, if any Collateral shall require rebuilding, repairing, maintenance, preparation, or is in process or other unfinished state, Secured Party shall have the right, at its sole option and discretion, and at Debtor's sole cost and expense, to do such rebuilding, repairing, preparation, processing or completion of manufacturing, for the purpose of putting the Collateral in such saleable or disposable form as it shall deem appropriate. At Secured Party's request after any Event of Default, Debtor shall assemble the Collateral and make it available to Secured Party at places which Secured Party shall select, whether at Debtor's premises or elsewhere, and make available to Secured Party, without rent, all of Debtor's premises and facilities for the purpose of Secured Party's taking possession of, removing or putting the Collateral in saleable or disposable form. If any of the Collateral consists of motor vehicles, Secured Party may use Debtor's license plates, in any lawful manner.

(b)     Any such sale, lease or other disposition of Collateral may be made without demand for performance or any notice of advertisement whatsoever except that where an applicable statute requires reasonable notice of sale or other disposition, Debtor agrees that the sending of five days' notice by ordinary mail, postage prepaid, to Debtor of the place and time of any public sale or of the time at which any private sale or other intended disposition is to be made, shall be deemed reasonable notice thereof. Notwithstanding the foregoing, if any of the Collateral is perishable and may be materially diminished in value during such five day period, Secured Party shall provide Debtor with such shorter notice as it deems reasonable under the circumstances.

(c)     The proceeds of any such sale, lease or other disposition of the Collateral shall be applied first to the expenses of retaking, holding, storing, processing and preparing for sale, selling, and the like, and to the reasonable attorneys' fees and legal expenses incurred by Secured Party, and then to satisfaction of the Obligations, and to the payment of any other amounts required by applicable law, after which Secured Party shall account to Debtor for any surplus proceeds. If, upon the sale, lease or other disposition of the Collateral, the proceeds thereof are insufficient to pay all amounts to which Secured Party is legally entitled, Debtor will be liable for the deficiency, together with interest thereon, at the rate prescribed in the agreements giving rise to the Obligations, and the reasonable fees of any attorneys employed by Secured Party to collect such deficiency. To the extent permitted by applicable law, Debtor waives all claims, damages and demands against Secured Party arising out of the repossession, removal, retention or sale of the Collateral, except to the extent same is caused by the gross negligence or willful misconduct of Secured Party, its agents or employees.

11.     **Costs and Expenses.**

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

Any and all fees, costs and expenses, of whatever kind or nature, including the reasonable attorneys' fees and legal expenses incurred by Secured Party, in connection with the filing or recording of financing statements and other documents (including all taxes in connection therewith) in public offices, the payment or discharge of any taxes, insurance premiums, encumbrances or otherwise protecting, maintaining or preserving the Collateral and Secured Party's security interest therein, or in defending or prosecuting any actions or proceedings arising out of or related to the transaction to which this Security Agreement relates, shall be paid by Debtor on demand. Until so paid, all such amounts shall be added to the principal amount of the Obligations and shall bear interest at the rate prescribed in the agreements giving rise to the Obligations.

12.    **Power of Attorney.**

Debtor authorizes Secured Party and does hereby make, constitute and appoint Secured Party, and any officer or agent of Secured Party, with full power of substitution, as Debtor's true and lawful attorney-in-fact, with power, in its own name or in the name of Debtor, to do any of the following upon and after the occurrence of any Event of Default: (a) to endorse any notes, checks, drafts, money orders, or other instruments of payment (including payments payable under or in respect of any policy of insurance) in respect of the Collateral that may come into possession of Secured Party; (b) to sign and endorse any invoice, height or express bill, bill of lading, storage or warehouse receipts, drafts against debtors, assignments, verifications and notices in connection with accounts, and other documents relating to Collateral; (c) to pay or discharge any taxes, liens, security interest or other encumbrances at any time levied or placed on or threatened against the Collateral; (d) to demand, collect, receipt for, compromise, settle and sue for monies due in respect of the Collateral; (e) to receive, open and dispose of all mail addressed to Debtor and to notify the Post Office authorities to change the address for delivery of mail addressed to Debtor to such address as Secured Party may designate; and (f) generally to do all acts and things which Secured Party deems necessary to protect, preserve and realize upon the Collateral and Secured Party's security interest therein. Debtor hereby approves and ratifies all acts of said attorney or designee, who shall not be liable for any acts of commission or omission, nor for any error or judgment or mistake of fact or law except for its own gross negligence or willful misconduct. This power of attorney shall be irrevocable for the term of this Security Agreement and thereafter as long as any of the Obligations shall be outstanding.

13.    **Notices.**

Unless the party to be notified otherwise notifies the other party in writing as provided in this Section, notices shall be given hereunder by telecopy, by certified mail or by recognized overnight delivery services:

If to Debtor:        Commonwealth Diagnostics International, Inc.
                    39 Norman Street a/k/a 1 Holyoke Square
                    Salem, MA 01970
                    Attn: Craig S. Strasnick, CEO
                    cstrasnick@commdx.com
            with a copy to:

9

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

Gray W. Rifkin, Esq., Counsel
grifkin@commdx.com

Kamal Sleiman, Esq.
McDermott Will & Emery, LLP
333 SE 2nd Avenue, Suite 4500
Miami, FL 33131-2184
ksleiman@mwe.com

If to Secured Party:     Newtek Small Business Finance, LLC
1981 Marcus Avenue, Suite 130
Lake Success, NY 11042
Attn:  Gary Golden
ggolden@newtekbusinessservices.com

Notices shall be effective (a) if given by certified mail, on the third day after deposit in the mails with postage prepaid, addressed as aforesaid; (b) if given by recognized overnight delivery service, on the business day following deposit with such service, addressed as aforesaid; or (c) if given by telecopy, when the telecopy is transmitted to the telecopy number as aforesaid; provided that all notices to Secured Party shall be effective on receipt.

## 14.     Other Security.

To the extent that the Obligations are now or hereafter secured by property other than the Collateral or by the guarantee, endorsement or property of any other person, then Secured Party shall have the right in its sole discretion to pursue, relinquish, subordinate, modify or take any other action with respect thereto, without in any way modifying or affecting any of Secured Party's rights and remedies hereunder.

## 15.     Further Security.

To further secure the Obligations, Debtor hereby grants, pledges and assigns to Secured Party a continuing lien on, security interest in and rights of set-off in all money, securities and other property of Debtor, and the proceeds thereof, how or hereafter actually or constructively held or received by or for Secured Party or any affiliate of Secured Party. Debtor hereby authorizes Secured Party to deliver a copy of this Agreement to others as written notification of Debtor's transfer of a security interest in the foregoing property. Upon and after any Event of Default, Secured Party is hereby authorized at any time and from time to time, without notice, to apply all or part of such moneys, securities, property, proceeds, deposits or credits to any of the Obligations in such amounts as Secured Party may elect in its sole and absolute discretion, although the Obligations may then be contingent or unmatured and whether or not the collateral security may be deemed adequate.

## 16.     Miscellaneous.

111156 - 711071 - General Security Agreement - Commonewealth Diagnostics International, Inc.

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

(a)     Beyond the safe custody thereof, Secured Party shall have no duty as to the collection of any Collateral in its possession or control or in the possession or control of any agent or nominee of Secured Party, or any income thereon or as to the preservation of rights against prior parties or any other rights pertaining thereto.

(b)     No course of dealing between Debtor and Secured Party, or Secured Party's failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as    waiver thereof. Any single or partial exercise of any right, power or privilege hereunder shall not preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

(c)     All of Secured Party's rights and remedies with respect to the Collateral, whether established hereby or by any other agreements, instruments or documents or by law, shall be cumulative and may be exercised singly or concurrently.

(d)     This Security Agreement may be amended or modified, and a provision hereof may be waived, only by a writing signed by all of the parties hereto.

(e)     The provisions of this Security Agreement are severable, and if any clause or provision shall be held invalid or unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall affect only such clause or provision, or part thereof, in such jurisdiction and shall not in any manner affect such clause or provision in any other jurisdiction, or any other clause or provision of this Security Agreement in any jurisdiction.

(f)     The benefits of this Security Agreement shall inure to the benefit of the successors and assigns of Secured Party. The rights and obligations of Debtor under this Security Agreement shall not be assigned or delegated without the prior consent of Secured Party.

(g)     UNLESS SBA IS HOLDER OF THE NOTE, AS SET FORTH ABOVE, THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO ITS CONFLICTS OF LAWS PRINCIPLES.

(h)     Debtor hereby irrevocably consents to the jurisdiction of the courts of the State of New York and of any Federal Court located in such State in connection with any action or proceeding arising out of or relating to the Obligations, this Security Agreement or the Collateral, or any document or instrument delivered with respect to any of the Obligations. Debtor hereby waives personal service of any summons, complaint or other process in connection with any such action or proceeding and agrees that the service thereof may be made by certified mail directed to Debtor at the address provided herein for receipt of notices. Debtor so served shall appear or answer to such summons, complaint or other process within thirty days after the mailing thereof. Should Debtor so served fail to appear or answer within said thirty-day period, Debtor shall be deemed in default and judgment may be entered by Secured Party against Debtor for the amount or such other relief as may be demanded in any summons, complaint or other process so served. In the alternative, in its discretion Secured Party may effect service upon Debtor in any other form or manner permitted by law.

(i)     IN THE EVENT OF ANY LITIGATION RELATING TO THIS AGREEMENT

11

NSBF/RID #: 111156/711071
SBA Loan No: PLP 97379950-01

OR THE OBLIGATIONS, DEBTOR WAIVES ANY AND ALL RIGHTS TO A TRIAL BY
JURY.

IN WITNESS WHEREOF, Debtor has executed or caused its duly authorized officer, on
Debtor's behalf, to execute, this Security Agreement as of the day and year first written above.

**BORROWER:**

**COMMONWEALTH DIAGNOSTICS INTERNATIONAL, INC.**

By: _____

Craig S. Strasnick, President

COMMONWEALTH OF MASSACHUSETTS      }
                                            }    ss.:
COUNTY OF ___Essex_____ }

On this 21st day of September, 2017, before me appeared Craig S. Strasnick to me personally
known, who, being by me duly sworn (or affirmed), did say that he is the President of
Commonwealth Diagnostics International, Inc., and that said instrument was signed in behalf of
said corporation by authority of its board of directors, and said Craig S. Strasnick acknowledged
said instrument to be the free act and deed of said corporation.

_____
Notary Public

ALEXANDER J. CAPANO
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Oct. 17, 2019

111156 - 711071 - General Security Agreement - Commonewealth Diagnostics International, Inc.